**Amanda Gamblin**, OSB #021361
Email: agamblin@schwabe.com
**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW Fifth Avenue, Suite 1900
Portland, OR  97204
Telephone: 503-222-9981
Facsimile:  503-796-2900

    Attorneys for Defendants The Contingent and
    The Black United Fund of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| GREAT NORTHERN RESOURCES, INC., DYNAMIC SERVICE FIRE AND SECURITY, LLC, and WALTER VAN LEJA, on behalf of themselves and others similarly situated, | Case No. 3:20-cv-01866-IM (Lead Case) |
| | Case No.: 3:20-cv-2022-IM (Trailing Case) |
| Plaintiffs, | |
| vs. | **NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| KATY COBA, in her Official Capacity as State Chief Operating Officer and Director of the OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES; OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES; THE CONTINGENT; BLACK UNITED FUND OF OREGON, and DOES 1-10, | |
| Defendants. | |

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

INTRODUCTION .............................................................................................................1

STATEMENT OF FACTS .................................................................................................2

    A.    The State of Oregon disbursed $1.39 billion of CARES Act funds to many COVID-19-related expenses and programs, including just 4 percent of that total to Oregonians who identify as Black. ............................................................. 3

    B.    The Closing of the Fund ........................................................................... 6

    C.    Reopening the Fund ................................................................................. 8

    D.    Procedural Background............................................................................ 8

LEGAL STANDARD........................................................................................................11

    A.    Standard for the Extraordinary Remedy of a Temporary Restraining Order........ 11

    B.    The "Doubly Demanding" Standard for a Mandatory Injunction ....................... 11

ARGUMENT ...................................................................................................................13

    A.    The Motion with respect to Plaintiff Great Northern should be denied because it has suffered no irreparable injury. ...................................................... 13

    B.    The Motion with respect to the putative class should be denied because it has not been certified and is otherwise fatally flawed ........................................... 14

        1.    Contrary to Plaintiffs' contention that the Court "must consider irreparable harm that will be inflicted upon putative class members," the Ninth Circuit has repeatedly emphasized the general rule that "[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis." ............................................... 15

        2.    Plaintiffs' proposed class action is fatally flawed.................................... 17

    C.    The Motion with respect to the Dynamic Service Plaintiffs should be denied because they have no standing to seek injunctive relief............................ 22

    D.    The Dynamic Service Plaintiffs fail to establish that the "facts and law clearly favor" them on the three hardship factors.................................................. 24

        1.    Plaintiffs fail to meet their burden to establish an imminent, irreparable harm because they waited too long......................................... 24

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

2.    The balance of equities weigh against any relief because the injury to the Nonprofits, forcing them to violate their mission, cannot be compensated by Plaintiffs. ........................................................................ 27

3.    The public interests weigh against any relief............................................ 28

CONCLUSION ...................................................................................................................32

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*See FW/PBS, Inc. v. Dallas*,
  493 U.S.  215(1990) ...................................................................................22

*Allen v. Wright*,
  468 U.S. 737 (1984)..................................................................................23

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1979) ..............................................................12, 13

*Ariz. Libertarian Party v. Regan*,
  189 F. Supp. 3d 920 (D. Az. 2016).........................................................26

*Bailey v. Patterson*,
  323 F.2d 201 (5th Cir. 1963) ..................................................................16

*Baxter v. Palmigiano*,
  425 U.S. 308 (1976)..................................................................................15

*Bd. of Sch. Comm'rs v. Jacobs*,
  420 U.S. 128, 95 S. Ct. 848, 43 L.Ed.2d 74 (1975).................................15

*Bernhardt v. Los Angeles Cty.*,
  339 F.3d 920 (9th Cir. 2003) ..................................................................28

*Braunstein v. Ariz. Dep't of Transp.*,
  683 F.3d 1177 (9th Cir. 2012) ................................................................19

*Carroll v. Nakatani*,
  342 F.3d  934(9th Cir. 2003) ................................................13, 18, 19, 22

*Chhoeun v. Marin*,
  306 F. Supp. 3d 1147 (C.D. Cal. 2018) ..................................................17

*Christianson v. Colt. Indus. Operating Corp.*,
  486 U.S. 800 (1988)..................................................................................14

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)....................................................................................23

*Clay v. Am. Tobacco Co.*,
  188 F.R.D. 483 (S.D. Ill. 1999) ..............................................................19

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

*Colopy v. Uber Techs. Inc.*,
  19-CV-06462-EMC, 2019 WL 6841218 (N.D. Cal. Dec. 16, 2019)................................15, 16

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ...............................................................................................22

*Davis v. Romney*,
  490 F.2d 1360 (3d Cir. 1974)...............................................................................................15

*Dish Network Corp. v. FCC*,
  653 F.3d 771 (9th Cir. 2011) ...............................................................................................28

*Doe v. Trump*,
  418 F. Supp. 3d 573 (D. Or. 2019) ................................................................................16, 17

*E. Bay Sanctuary Covenant v. Trump*,
  932 F.3d 742 (9th Cir. 2018) ...............................................................................................16

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
  92 F.3d 1486 (9th Cir. 1996) .........................................................................................15, 17

*Emery v. Premo*,
  No. 6:14-cv-00285-SI, 2015 U.S. Dist. LEXIS 118897 (D. Or. Sept. 8, 2015) ....................14

*Fisher v. Roe*,
  263 F.3d 906 (9th Cir. 2001) ...............................................................................................12

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ...........................................................................12, 13, 28, 32

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)..............................................................................................................18

*Hall v. City of Los Angeles*,
  697 F.3d 1059 (9th Cir. 2012) .............................................................................................14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................................20

*Hazel v. U.S. Postmaster General*,
  7 F.3d 1 (1st Cir. 1993)........................................................................................................23

*Joyce v. City & Cty. of San Francisco*,
  846 F. Supp. 843 (N.D. Cal. 1994) ......................................................................................17

*Kona Enters., Inc. v. Estate of Bishop*,
  229 F.3d 877 (9th Cir. 2000) ...............................................................................................14

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

*Korab v. McManaman*,
   805 F. Supp. 2d 1027 (D. Haw. 2011) ........................................................12, 16, 18

*L.A. Mem'l Coliseum Comm. v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) ...............................................................................25

*Laffey v. Nw. Airlines, Inc.*,
   740 F.2d 1071 (D.C. Cir. 1984) .............................................................................14

*Landes Const. Co. v. Royal Bank of Canada*,
   833 F.2d 1365 (9th Cir. 1987) ...............................................................................12

*LGS Architects, Inc. v. Concordia Homes*,
   434 F.3d 1150 (9th Cir. 2006) ...............................................................................12

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
   638 F.3d 644 (9th Cir. 2011) .................................................................................15

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).................................................................................................22

*M.R. v. Dreyfus*,
   697 F.3d 706 (9th Cir. 2012) ...........................................................................15, 17

*Marquard v. New Penn Fin., LLC*,
   No. 3:17-cv-549-SI, 2017 U.S. Dist. LEXIS 155209 (D. Or. Sep. 22, 2017) .........23

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997).................................................................................................11

*McDonald v. Corr. Corp. of Am.*,
   No. CV-09-00781-PHX-JAT, 2010 U.S. Dist. LEXIS 122674 (D. Ariz. Nov.
   4, 2010) ....................................................................................................................19

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
   762 F.2d 1374 (9th Cir. 1985) ...............................................................................26

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .................................................................................21

*Pac. Kidney & Hypertension, LLC v. Kassakian*,
   156 F. Supp. 3d 1219 (D. Or. 2016) ......................................................................28

*Panda v. Wolf*,
   No. 20-cv-1907 (APM), 2020 U.S. Dist. LEXIS 169052  (D.C. Cir. Sept. 16,
   2020) ........................................................................................................................23

Page v    NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

*Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*,
   866 F.2d 228 (7th Cir. 1988) ................................................................12

*Pashby v. Delia*,
   709 F.3d 307 (4th Cir. 2013) ...............................................................28

*Pimentel v. Dreyfus*,
   670 F.3d 1096 (9th Cir. 2012) ..............................................................17

*Price v. City of Stockton*,
   390 F.3d 1105 (9th Cir. 2004) ..............................................................16

*Sampson v. Murray*,
   415 U.S. 61 (1974)................................................................................25

*Stormans, Inc. v. Selecky*,
   586 F.3d 1109 (9th Cir. (2009 ..............................................................27

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ................................................................27

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)..............................................................................11

*Tape Head Co. v. RCA Corp.*,
   452 F.2d 816 (10th Cir. 1971) ..............................................................15

*U.S. v. Town of Cicero*,
   786 F.2d 331 (7th Cir. 1986) ................................................................23

*Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*,
   766 F.2d 1319 (9th Cir. 1985) ..............................................................29

*Vietnam Veterans against War v. Benecke*,
   63 F.R.D. 675 (W.D. Mo. 1974)...........................................................19

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982)........................................................................11, 32

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)........................................................................11, 24, 31

*Wise v. City of Portland*,
   No. 3:20-cv-01193-IM, 2020 U.S. Dist. LEXIS 160374 (D. Or. Sep. 2, 2020).....................11

*Yaffe v. Powers*,
   454 F.2d 1362 (1st Cir. 1972)...............................................................15

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
    19-CV-00792-EMC, 2020 WL 4458908 (N.D. Cal. May 27, 2020)......................................16

*Zepeda v. INS*,
    753 F.2d 719 (9th Cir. 1983) ..........................................................................................15, 17

**Statutes**

42 U.S.C. § 801 ...............................................................................................................................3

42 U.S.C. § 801(f)(2) ...................................................................................................................3, 4

42 U.S.C. § 2000d-7 ......................................................................................................................25

Coronavirus Aid, Relief, and Economic Security Act........................................................3, 4, 24

Housing and Community Development Act....................................................................................16

Oregon Cares Act.......................................................................................................................6, 25

**Other Authorities**

Black's Law Dictionary (11th ed. 2019).......................................................................................12

Fed. R. Civ. P. 23 .............................................................................................................15, 20, 21

LR 7-1(b) .......................................................................................................................................23

U.S. Const. amend. XIV ................................................................................................................24

U.S. Dep't of the Treasury, *The CARES Act Works for All Americans*,
    https://home.treasury.gov/policy-issues/cares .........................................................................3

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

## PRELIMINARY STATEMENT

The Contingent and the Black United Fund ("BUF," and collectively, the "Nonprofits") on the one hand, and the State Defendants on the other, each submit briefs in response to the motion for temporary restraining order filed by Plaintiffs on December 11, 2020 (ECF 39-1.)

The Nonprofits respond primarily to issues concerning justiciability, irreparable harm, balancing of harms, and public interest—matters that it believes foreclose any preliminary injunctive relief in this case. The State Defendants primarily address the more factually intensive issues concerning the likelihood of success on the merits. Each set of Defendants joins fully in the brief by the other set of Defendants.

On December 15, 2020, the Court ordered supplemental briefs to address two questions. (ECF 44.) Those two questions relate largely to threshold issues raised by the Nonprofits in their response brief. Accordingly, it is recommended for the Court's convenience that the briefs be read in the sequence filed:

1.  This Nonprofit Defendants' Opposition Brief;

2.  Defendants' Joint Supplemental Brief;

3.  State Defendants' Opposition Brief.

## INTRODUCTION

Plaintiffs have waited too long. The Oregon Cares Fund for Black Resiliency and Relief (the "Fund") is now closed to all new applications making any alleged injuries past ones that will not be repeated. And even if the Court were to entertain the extraordinary relief sought by Plaintiffs, the Nonprofits could not reopen the Fund and process new class applications, or even just the new Plaintiffs' applications, in any way that would give them access to a grant before December 30th. Any failure to exhaust the Fund by that date will result in the Fund ultimately reverting to the Federal Government, harming Oregon's Black community, the entire State of Oregon, and will even rob the Plaintiffs of the very relief they seek. Plaintiffs knew the Fund was created as early as July 2020. They could have sought relief then, or in August, September,

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

or October.  But they waited until December 11, 2020—three days after the Fund was closed due to having too many applicants—to file the instant Motion.  At this late date there is simply no harm to be redressed and no possible relief available.

Regardless of the legal framework, it boils down to the fact that the Plaintiffs waited too long.  Specifically, as to each Plaintiff:

*Plaintiff Great Northern has suffered no irreparable injury* because, as the Court has already held, its harm is in the past and redressable by the funds deposited with the Court;

*The putative class is fatally flawed* because (i) it has not been certified, (ii) its members are not alleged to be "ready and able" to apply, but (iii) even if they were, processing applications from the proposed class is practically impossible by December 30th, and (iv) the myriad conflicts of interests between the named Plaintiffs' and the class they purport to represent when they are all reaching for the same, limited pot of money, underscores that this "class" is a sham;

*The new Plaintiffs lack standing* because any alleged violation of the new Plaintiffs' constitutional rights occurred when the Fund was still accepting applications and with the Fund closed to *all persons*, those Plaintiffs face no ongoing alleged deprivation of rights based on race;

Additionally, the balance of hardships does not favor Plaintiffs because while they have failed to allege irreparable harm, the Nonprofits and others do risk noncompensable injuries in loss of goodwill, reputation, and ability to raise funds should the Court order them to abandon their missions and The Contingent to breach its Grant Agreement with the State.  Additionally, the public interest will be harmed by an injunction because the Fund would inevitably revert to the federal government, being lost to all Oregonians permanently.

For these reasons and others, which are further established below, the Nonprofits request that this Court deny Plaintiffs' motion for a pretrial injunction.

## STATEMENT OF FACTS

It was widely known during the summer of 2020 that, without a targeted action, COVID-

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

19 would exacerbate past disparate impacts of discrimination for Black people, Black-owned businesses, and Black community-based organizations.  These Oregonians were and are suffering disproportionate economic harms from COVID-19 and yet, in disproportionate numbers, were not being aided by existing and ostensibly race-neutral relief efforts.

Plaintiffs' claim relates to the State's narrow response—namely, to enter into a grant agreement with The Contingent, which would help equalize some of the racial imbalance created by other, ostensibly race-neutral relief efforts and lessen the disparate impacts of prior and continuing discrimination.

**A.      The State of Oregon disbursed $1.39 billion of CARES Act funds to many COVID-19-related expenses and programs, including just 4 percent of that total to Oregonians who identify as Black.**

Recognizing that delay deepens and exacerbates economic impacts, the federal government enacted several emergency measures, including the Coronavirus Aid, Relief, and Economic Security Act or the "CARES Act."  That Act, according to the Treasury Department's webpage, "provides fast and direct economic assistance for American workers and families, small businesses, and preserves jobs for American industries."  U.S. Dep't of the Treasury, *The CARES Act Works for All Americans*, *available at* https://home.treasury.gov/policy-issues/cares. As part of the CARES Act, Congress appropriated $150 billion to be split among states, local governments, and Indian tribes for those entities to spend until December 30, 2020 on previously unbudgeted amounts that were "necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID–19)."  42 U.S.C. § 801(a), (d).  Of that amount, $1.64 billion was allocated to Oregon.  (ECF 20-1, Ex. 3.)  Funds not used by December 30, 2020 revert back to the federal government.  42 U.S.C. § 801(f)(2) (as added by Section 5001(a) of the CARES Act).

On July 14, 2020, the State Emergency Board allocated over $200 million of the CARES Act funds received by the State to assist vulnerable Oregonians and their businesses.  This allocation included $62 million to the Oregon Cares Fund for Black Relief and Resiliency (the

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

"Fund") "to provide economic relief to Black individuals and businesses.  National and state data show that the Black community is one of the communities experiencing a disproportionate share of negative economic and health effects due to COVID-19."  (*Id.*, Ex. 4.)

The State thereafter entered into a grant agreement with The Contingent, requiring it to distribute $62 million from the Fund in accordance with State requirements.  (Sand Decl., Ex. 1.)[1]  The Grant Agreement requires that The Contingent make grants to only certain persons to cover certain expenses.  For example, under the grant terms, The Contingent is prohibited from using "Grant Funds [other than] for the intended purpose described in Exhibit A."  (*Id.* at § 15.1.1 (default provision).)  Per those Exhibit A provisions, the proceeds of the grant were "to be used for Black relief and resiliency" by The Contingent "issu[ing] grants in amounts of (i) $500 to $3,000 for individuals and families and (ii) $2,000 to $200,000 for businesses and community-based nonprofit organizations."  (*Id.*,t Ex. A.)  Oregon individuals and businesses receiving a grant from The Contingent have to, at a minimum, "self-identify as Black[.]"  (*Id.*)  Consistent with the federal mandate, on December 30, 2020, any "Grant Funds received by Grantee that remain unexpended or contractually committed for payment of the Project" must be returned to the State, (*id.*, §§ 1, 6, 17.1) and, as discussed above, then to the federal government. 42 U.S.C. § 801(f)(2).  The Contingent subcontracts with BUF to process applications.  BUF is not a direct grant recipient of the CARES Act Funds, nor does it have access to the bank account where The Fund resides.  (Sand Decl., ¶¶ 3, 4.)

In August 2020, The Contingent opened a state-wide process to receive grant applications consistent with the Grant Agreement.  The Contingent dedicated a webpage (thecontingent.org/oregon-cares/) and purchased and programmed a Customer Relationship Management ("CRM") system specifically tailored to handle the needs of the application process.  (Sand Decl., ¶ 4)  When applicants apply, they have two applications to choose from:

---

[1] The grant from the Oregon Department of Administrative Services ("DAS") to The Contingent was for $62 million, however $3.1 is allowed to be allocated to cover administrative costs, leaving $58,900,000 to distribute to the community.  (Sand Decl., ¶ 4.)

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

individual/family or business/non-profit.  (Sand Decl., ¶ 5.)  When the applicant submits an

application, the CRM program automatically assigns a time stamp.  The application then moves

through the program based on that time stamp.  (*Id.*)  BUF processes the individual and family

applications, and The Contingent processes the business and nonprofit applications.  (*Id.*)  To

process applications, The Contingent hired a small army of temporary employees who align with

The Contingent's mission.

Once applications are submitted, BUF and The Contingent verify the information is

accurate and that it meets the criteria for funding.  (Sand Decl., ¶ 6.)  Both BUF and The

Contingent assign two people to each application.  After the first person verifies the application,

calculates the award, and assigns it a score (an amount to be funded), the second person reviews

the application for accuracy and compliance.  (*Id.*)  The applications are then put into a hold

status to be reviewed by the Council of Trust, which is a group of Black leaders whose job is to

review the applications for compliance with the Fund's purpose and rules and provide final

approval for funding.  (*Id.*)  The Council of Trust meets regularly.  Once an application has

received the Council of Trust's approval, the applicant receives an email alerting them that their

grant has been approved.  (*Id.*)  The applicant must then click on a link to provide their banking

information for an electronic transfer of funds.  Once the banking information is received, an

employee of The Contingent verifies that the banking information belongs to the applicant.

Once verified, The Contingent approves the funding transfer.

To date, The Fund has received nearly 500 applications from businesses and nearly

10,000 applications from individuals and families.  (Sand Decl., ¶ 7.)  While many applications

have been fully processed, many applications still await a final commitment of funds.  (*Id.*)

Among the Black-owned Oregon businesses with applications pending are Next Level

Hair Design, LLC.  Next Level's business focuses on the Black community by providing hair

care products primarily for use by Black people.  (Declaration of Quintoshia Bell, ¶ 3.)  Next

Level's business has been decimated by the pandemic; the owner has lost two jobs, and she had

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

to lay off all four of her employees.  (*Id.*, ¶¶ 3-7.)  The business filed an application for Oregon Cares Fund money on December 7, hoping to use the money to replenish inventory and rehire employees.  (*Id.* ¶ 7.)

Among the Black Oregonians with applications pending is Ernestine Perry.  Ms. Perry is a frontline worker at Oregon Health Sciences University ("OHSU"), who has worked consistently and diligently through the COVID-19 pandemic.  (Declaration of Ernestine Perry, ¶ 2.)  Due to the pandemic, her landlord of ten years is selling the house she rents, which will displace her and her disabled daughter by January 5, 2021.  (*Id.* ¶ 3.)  Ms. Perry applied for Oregon Cares Act funds on December 8, 2020.  (*Id.* ¶ 1.)   If she is awarded a grant, she will use the money to help her find a new home for her and her daughter.  Otherwise, they will be relegated to living in a hotel, which she cannot afford for long.  (*Id.* ¶¶ 4-5.))

Black individuals and Black-owned businesses were not the only ones to apply, however.  Although grant funds were restricted, the application *process* was not so restrictive.  (Sand Decl., ¶ 5.)  Indeed, among other applicants was the plaintiff in the consolidated action, Cocina Cultura LLC, a coffee shop that is 0 percent Black owned.  Cocina Cultura submitted its grant application in August 2020, shortly after the Fund opened.  *Cocina Cultura LLC v. State of Oregon*, Case No. 3:20-cv-2022, ECF 1, ¶¶ 13-14 (D. Or.).  Likewise, on October 4, 2020, plaintiff Great Northern Resources, Inc., a logging company in eastern Oregon, applied for a grant even though the business is 0 percent Black owned.  (ECF 1, ¶ 30.)  Great Northern applied for its grant nearly three months before the Fund expires.  (*Id.*, ¶ 28.)  That application was denied on November 9, 2020 for reasons not relating to race.  (ECF 19-1.)

### B.    The Closing of the Fund

As of early December, with less than a month to go before the Fund expired, all but about $8 million of the Fund had been allocated.  (Sand Decl., ¶ 7.) It became increasingly clear that the amount of money sought in pending applications exceeded the amount of money remaining in the Fund.  *Id.*  The decision to close the Oregon Cares Fund to new applicants was complex

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

and a difficult one to make.  At the time when The Contingent recommended closure to the Council of Trust, there were 5,990 new applications and 1,270 applications in process.  In addition, 1,491 applicants had been approved for funding but were experiencing difficulty getting their bank account to accept the wire transfer.  *Id.*  Based on The Contingent's short experience processing applications, it could reasonably estimate the percentage of applications that are rejected.  Taking all of the applications in the queue, considering the historical average funding for each category of application, adjusting for the percentage of applications that may not make it to final approval, and considering the applications already awarded but experiencing banking issues, The Contingent projected that the total funds needed to process and award all applications was $59,454,337.40.  *Id.*  Including the money deposited with the Court and allocated to Plaintiffs in these cases, the Fund needed a total of $59,701,191 to cover the pending applications.  But the Fund had only $58,900,000.00 to distribute.[2]  Therefore, if The Contingent's projections are sound, it projects being $801,191.00 short of funds necessary to cover the applications already in the queue. (Sand Decl., ¶ 8.)

Accordingly, The Contingent apprised the Court at the December 7 scheduling conference that The Council of Trust was anticipated to shut down the application process at its meeting the following day.  *Cocina Cultura*, Dec. 7, 2020 Hr'g Tr. at 17-18 ("it's possible, and perhaps even likely, that tomorrow the funds will close to new applications").  As predicted, on December 8, the applications process was closed.  A splash screen now appears on the web page in two places notifying the public that, "The Oregon Cares Fund is no longer accepting applications.  …  While grant awards are not guaranteed for any applicant, we will be working around to clock to make sure as many applications currently submitted are processed in a timely manner and ***on a first-come, first-serve basis***."  (Sand Decl., ¶ 8)  (emphasis added).

---

[2] The grant from DAS to The Contingent was for $62 million, however $3.1 million is allocated to cover administrative costs, leaving $58.9 million to distribute to the community.  (Sand Decl., ¶ 4.)

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

### C.    Reopening the Fund

Still waiting in line are 7,260 applicants who filled out grant applications before the process closed, including Next Level Hair Design and Ernestine Perry.  It would be difficult, and likely impossible, to open the application process and consider any new applications based on any modified processing criteria.  (Sand Decl., ¶¶ 9, 10.)  First, The Contingent strongly suspects that, should the Court order it to process non-Black applications ahead of the applications of individuals who identify as Black and filed an application before the Fund closed, the temporary employees it hired to process applications, who are losing their jobs in two weeks anyway, would quit, leaving no one to process applications.  (Sand Decl., ¶ 9.)

Second, the basic programming of the application system starts with a time stamp on the application.  (Sand Decl., ¶ 10.)  Altering the application process to some other prioritization scheme would require reprogramming the CRM software.  Even then, Plaintiffs and class applications would still fall to the bottom.  (*Id.*)  That is because many of the applications in the pool are fully or partially processed.  Any new applications would have to start from the beginning.  They will, therefore, take longer to process and will, even with a new prioritization scheme, fall to the bottom of the pile.  (*Id.*)  To create a fair playing field The Contingent would have to *un*process all of the 7,260 applications in the queue and then start reprocessing all of them from the beginning.  (*Id.*)  It would be impossible for The Contingent and BUF to process all of the pending applications along with even one new application using a new application prioritization scheme by December 30, 2020.  (*Id.*)

### D.    Procedural Background

Great Northern filed this action as the sole plaintiff on October 29, 2020.  (ECF 1.)  On November 7, Great Northern filed a motion for a temporary restraining order or preliminary injunction.  (ECF 12.)  By the time that motion was heard, The Contingent had denied Great Northern's application, and—in relation to Great Northern's contention that money in the Fund would be committed or revert to the federal government by December 30, 2020—offered to deposit funds with the Court equaling the amount of money in its grant application.  On

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

November 20, 2020, the Court denied Great Northern's motion. (ECF 27.) The Court explained that Great Northern's claimed harm was "in the past" rather than having "continuing, present adverse effects," thus foreclosing the propriety of injunctive relief. (ECF 27, pp. 3-4.) The Court additionally granted The Contingent's motion to deposit funds with the Court. (ECF 26.)

That same day, the consolidated action, *Cocina Cultura*, was filed. Five days later, Cocina Cultura filed a similar request for injunctive relief. (*Cocina Cultura*, ECF 16.) Again, by the time that motion was heard, The Contingent had denied Cocina Cultura's application, and offered to deposit funds equaling the amount of money in its grant application. On December 7, 2020, the Court denied Cocina Cultura's motion for preliminary injunction. (*Cocina Cultura*, ECF 36.) The Court cited its opinion in *Great Northern* to the extent that Cocina Cultura's harm was "a discrete past harm." *Id.* at 5. The Court also found that:

> Plaintiff's claims of irreparable harm are further undercut by its delay in seeking relief. Plaintiff's business closed on August 22, 2020, and it suffered its alleged injury on August 31, 2020, when it applied for a grant. Plaintiff waited nearly three months to initiate this lawsuit, and another five days to file this Motion. . . . Plaintiff's nearly three-month delay in seeking injunctive relief "implies a lack of urgency and irreparable harm."

*Id.* at pp. 8-9.

On December 6, the day before the Court's ruling in *Cocina Cultura*, Great Northern filed an amended complaint, adding a new defendant, two new plaintiffs and a purported class allegation to its pleading. (ECF 32.) The new defendant is BUF. The two new plaintiffs are Dynamic Service Fire and Security, LLC and one of its owners, Walter Van Leja (the "Dynamic Service Plaintiffs"). Unlike the other plaintiffs in these actions, neither of the Dynamic Service Plaintiffs has ever applied for a grant from the Fund. (*Id.*, ¶¶ 42, 48.)

The putative class in the Amended Complaint consists of:

> all current and future individuals, families, and businesses who: (1) live or are based in Oregon; (2) have experienced or are experiencing hardship due to COVID-19; and (3) do not self-identify as black, and who therefore have been or are currently being disqualified from relief from the Fund on account of race.

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

(*Id.* at ¶ 68.)  Nothing in Plaintiffs' class definition addresses the diversity of interests (or conflicts in those interests) as among current, former, and non-applicants, nor does it address the diversity of interests between or among individuals and businesses.  Instead, Plaintiffs assume that all Oregonians who do not identify as Black hold identical interests in pursuing a fixed, limited, and dwindling pot of money.  Thus, Plaintiffs—including one who applied for a grant and two who did not—conclusorily alleged that, as class representatives, they have no "interests antagonistic to the class" or "conceivable conflict of interest that might arise between the proposed class representatives and the putative class members."  (*Id.*, ¶ 72.)

On December 11, 2020, five days after they filed the Amended Complaint, and three days after the Fund closed to new applications because it was oversubscribed, Plaintiffs filed what they couched as a "renewed" motion for pretrial injunctive relief.  (ECF 39-1.)  The legal arguments advanced by Plaintiffs are largely unchanged from Great Northern's original motion. For example, on the key issue of irreparable injury, Plaintiffs again assert that the "irreparable harm" is the "deprivation of constitutional rights," which they contend could not be addressed after a trial on the merits because "the program is required to expend all funds before the end of the year."  (*Id.* at 14-16.)

Plaintiffs were aware, however, that the Fund had closed to new applications.  (*Id.* at 16.) So, Plaintiffs demanded this Court order: "the defendants to (1) immediately reopen the application process and consider all applications on a race-neutral basis, and (2) stop awarding grants to those who applied under the exclusionary policy until all applications can be considered on a race-neutral basis."  (*Id.*)  But Plaintiffs were also aware that grants are awarded on a first-come, first-served basis.  In fact, in their Motion, they directed the Court to the splash page on The Contingent's website that included this statement.  (*Id.* at 16.)  Yet, Plaintiffs neglected to analyze whether the relief they sought was futile or how any injunction could provide them any relief whatsoever.

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

## LEGAL STANDARD

### A.    Standard for the Extraordinary Remedy of a Temporary Restraining Order

A preliminary injunction is "an extraordinary and drastic remedy" that should be denied "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation marks and citation omitted). A temporary restraining order is no less extraordinary and requires the same clear showing. *Wise v. City of Portland*, No. 3:20-cv-01193-IM, 2020 U.S. Dist. LEXIS 160374, at *17 (D. Or. Sep. 2, 2020).

This drastic remedy is unavailable unless the movant clearly shows: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A movant's failure may be attributable to any deficiency—*e.g.*, a failure to present a justiciable controversy, state a claim, or present persuasive evidence. *See, e.,g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (plaintiff lacked standing).

"[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). And, if "an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger*, 456 U.S. at 312-13 (quotation marks and citation omitted).

### B.    The "Doubly Demanding" Standard for a Mandatory Injunction

As this Court has already found in this case, a demand that The Contingent "accept a new application . . . and evaluate it without regard to race," is a demand for a "mandatory injunction." (ECF 28, p. 7.) Here, the Fund is closed. Thus, the form of order Plaintiffs seek is not an effort to *maintain* the status quo. Rather, they seek an injunction *upsetting the status quo* by requiring the Nonprofits to reopen the Fund and accept and process new applications from Plaintiffs and

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

the class they purport to represent.  Because they seek mandatory injunctive relief, Plaintiffs'

burden is "doubly demanding."  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  Such

injunctions are "particularly disfavored."  *Id.* (quoting *Marlyn Nutraceuticals, Inc. v. Mucos

Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).  Mandatory relief is "unnecessary" in

a case in which "it will not further the 'purpose of a preliminary injunction, [which] is merely to

preserve the relative positions of the parties until a trial on the merits can be held.'"  *LGS

Architects, Inc. v. Concordia Homes*, 434 F.3d 1150, 1158 (9th Cir. 2006) (quoting *Univ. of Tex.

v. Camenisch*, 451 U.S. 390, 395 (1981); alterations in *LGS*).  In general, mandatory injunctions

"are not granted unless extreme or very serious damage will result and are not issued in doubtful

cases or where the injury complained of is capable of compensation in damages."  *Anderson v.

United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (quotation marks and citation omitted).

Indeed, courts "should deny such relief unless the *facts and law* <u>clearly</u> favor the moving party."

*Garcia*, 786 F.3d at 740 (quotation marks and citation omitted; emphasis added).  No mandatory

injunction should enter, absent a plaintiff establishing a "<u>clear</u> likelihood of success on the

merits."  *Korab v. McManaman*, 805 F. Supp. 2d 1027, 1042 (D. Haw. 2011) (emphasis added).

The word "clear" is associated with a heightening of burdens—often underappreciated by

litigants.[3]  Here, "clear" means "free from doubt; sure" or "unambiguous."  BLACK'S LAW

DICTIONARY (11th ed. 2019).

Plaintiffs failed to cite a legal standard for mandatory injunctive relief.  Instead, they

argued that, as an alternate standard, "injunctive relief 'is appropriate when a plaintiff

---

[3] For example, the Ninth Circuit has observed that "many lawyers who come before us do not
fully appreciate the height of the hurdle" when a showing of "clear error" is required.  *Fisher v.
Roe*, 263 F.3d 906, 912 (9th Cir. 2001), *overruled on other grounds by Payton v. Woodford*, 346
F.3d 1204, 1216 (9th Cir. 2003).  Colorfully stated, a decision is *clearly* wrong only if it
"strike[s] [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish."  *Parts
& Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).  *See also Fisher*,
263 F.3d at 912 (invoking "dead fish" analogy).  Similarly, in the context of a motion for new
trial, a decision is against the "clear weight of the evidence" only if the trial court has "a firm
conviction that the jury has made a mistake."  *Landes Const. Co. v. Royal Bank of Canada*, 833
F.2d 1365, 1371-72 (9th Cir. 1987).

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

demonstrates that serious questions going to the merits [are] raised and the balance of hardships tips sharply in the plaintiff's favor.'"  (ECF 39-1, p. 6 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011)).  However, that standard does not apply when mandatory injunctive relief is sought.  Instead, as noted above, in addition to the public interest and balance of equities factors, the plaintiff must establish that "*facts and law* clearly favor the moving party;" *Garcia*, 786 F.3d at 740; that "extreme or very serious damage will result;" and that the injury is not compensable in money damages.  *Anderson*, 612 F.2d at 1115.

## ARGUMENT

As explained above, there are three relevant plaintiffs or groups of plaintiffs: Great Northern, the putative class, and the Dynamic Service Plaintiffs.  Examining each in turn, none meets the standards for the preliminary injunctive relief they collectively seek.

### A.    The Motion with respect to Plaintiff Great Northern should be denied because it has suffered no irreparable injury.

Plaintiffs filed their "renewed" motion for a temporary restraining order and preliminary injunction on behalf of all named and class plaintiffs.  But with respect to Great Northern, that motion should be denied.  Great Northern already filed its motion, which was fully litigated. Consistent with The Contingent's offer, in advance of denying the motion, the Court ordered The Contingent to deposit with the Court funds equal to the applied-for grant.  Finding that "Plaintiff's harm is in the past," the Court "conclude[d] that Plaintiff cannot show irreparable harm," and its motion for a TRO was thus denied.  (*Id.*, pp. 2, 3.)

To the extent Great Northern joins the "renewed" motion, its own request for relief must be denied.  Great Northern's application was denied.  This Court has already decided that its harm was in the past, and that it suffers no irreparable injury.  (ECF 28, p. 2.)

To the extent Great Northern's motion seeks reconsideration of the Court's prior treatment, it has failed to meet (or even cite) the standard for reconsideration.  Reconsideration is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources."  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003).  Generally, "courts

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

should be loathe to [reconsider a decision]." *Christianson v. Colt. Indus. Operating Corp*., 486 U.S. 800, 817 (1988) (citation and quotation marks omitted; nonstandard spelling of "loath" in original).

A motion for reconsideration generally is not a vehicle for new arguments, *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012), or repeating "arguments previously advanced," *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1082-83 (D.C. Cir. 1984). Instead, a party generally must show (1) newly discovered evidence; (2) clear error or manifest injustice; or (3) a change in controlling law. *Emery v. Premo*, No. 6:14-cv-00285-SI, 2015 U.S. Dist. LEXIS 118897, *1-2 (D. Or. Sept. 8, 2015) (Simon, J.). Those grounds do not include arguments presented for the "first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Great Northern has failed (has not even attempted) to meet the standard for reconsideration of the denial of its prior motion. No facts or law relevant to its motion have changed with respect to Great Northern. Instead, the motion makes precisely the same arguments already rejected against Great Northern a month ago. Therefore, at least with respect to Great Northern, the motion should be denied.[4]

> **B.    The Motion with respect to the putative class should be denied because it has not been certified and is otherwise fatally flawed**

The putative class lacks standing, seeks futile relief, and cannot meet the standards for a mandatory, temporary restraining order. Moreover, as addressed below, the class cannot be certified, and thus relief to it would be inappropriate. These problems are intractable and cannot cure the deficiencies in Plaintiffs' personal claims for injunctive relief.

---

[4] The Court may take notice of a substantial conflicts of interest problem between Great Northern and the other plaintiffs and putative class members. Great Northern's ultimate requested relief in this case—the grant of $200,000 from the Fund—has been secured especially for it. Given the limited money in the Fund, the other plaintiffs and the putative class interests are in conflict with Great Northern because they must desire that its claim fails on the merits.

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

    **1.**    *Contrary to Plaintiffs' contention that the Court "must consider irreparable harm that will be inflicted upon putative class members," the Ninth Circuit has repeatedly emphasized the general rule that "[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis."*

Plaintiffs contend that this Court "must consider irreparable harm that will be inflicted upon putative class members, even if the class has not yet been certified." (ECF 39-1 at 14-15). While Plaintiffs cite authority stating certain exceptions to the rule, they ignore the Ninth Circuit's holdings on the subject, which are contrary to Plaintiffs' sweeping proclamation.

In the Ninth Circuit, the general rule is that "[w]ithout a properly certified class, a court cannot grant relief on a class-wide basis." *Zepeda v. INS*, 753 F.2d 719, 728 n. 1 (9th Cir. 1983).[5] The Ninth Circuit has referenced that general rule repeatedly. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501–02 (9th Cir. 1996) (recognizing that "injunctive relief generally should be limited to apply only to named plaintiffs where there is no class certification"); *M.R. v. Dreyfus*, 697 F.3d 706, 738 (9th Cir. 2012) (same). As one district court recently explained, "[w]ithin the Ninth Circuit, the issuance of class-wide relief prior to the certification of the class is strongly disfavored." *Colopy v. Uber Techs. Inc.*, 19-CV-06462-EMC, 2019 WL 6841218, at *1 (N.D. Cal. Dec. 16, 2019) (citing *M.R.*, 697 F.3d at 738).

This limitation is based on "the traditional rule that injunctive relief should be narrowly tailored to remedy the specific harms shown by plaintiffs, 'rather than to 'enjoin all possible breaches of the law.'" *Zepeda*, 753 F.2d at 728 n.1 (quoting *Davis*, 490 F.2d at 1370). And the limitation carries even more force when a preliminary injunction is involved because "[a] district court's power to issue a preliminary injunction should not be broader in scope with respect to nonparties than its powers following a full trial on the merits." *Id. See also Los Angeles Haven*

---

[5] In support of that rule, the Ninth Circuit has cited *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974); *Yaffe v. Powers*, 454 F.2d 1362, 1364–65 (1st Cir. 1972); *Tape Head Co. v. RCA Corp.*, 452 F.2d 816, 819 (10th Cir. 1971) (per curiam); *Baxter v. Palmigiano*, 425 U.S. 308, 310 n. 1 (1976) (without certification, an action is not properly a class action); *Bd. of Sch. Comm'rs v. Jacobs*, 420 U.S. 128, 95 S. Ct. 848, 43 L.Ed.2d 74 (1975) (per curiam) (class action becomes moot if compliance with Rule 23(c) has been inadequate and action has become moot with respect to individual plaintiffs-representatives). *See Zepeda*, 753 F.2d at 728 n. 1 (citing same).

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

*Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (explaining that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court" and noting that "[t]his rule applies with special force where there is no class certification").

The courts have recognized narrow exceptions to the general prohibition on pre-certification, class-wide injunctive relief. *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 19-CV-00792-EMC, 2020 WL 4458908, at **3-4 (N.D. Cal. May 27, 2020) (citing cases); *Colopy*, 2019 WL 6841218, at **2-3 (describing exceptions); *Korab*, 805 F. Supp. 2d at 1039 (recognizing that, under certain circumstances, plaintiffs "*may* move for class-wide relief before moving to certify the class" but noting that "injunctive relief is discretionary and "[c]ourts often refuse such relief until *after* the class is certified, because until then it may be difficult to determine the extent of benefits to the class and consequences to defendant if an injunction is granted" (emphasis in original)).  For example, a class-wide preliminary injunction may be available prior to class certification where such relief is necessary and narrowly tailored to preserving the status quo, so that the case and ultimate relief does not effectively become moot.  *See, e.g., Price v. City of Stockton*, 390 F.3d 1105, 1117-18 (9th Cir. 2004) (tenants of low-income hotels secured a preliminary injunction prohibiting the City from destroying such hotels until it adopted relocation assistance plans as required by the Housing and Community Development Act).  Likewise, pre-certification class-wide relief may be appropriate where it is necessary to effectuate relief for the individual plaintiffs, such as in the context of desecration.  *Bailey v. Patterson*, 323 F.2d 201 (5th Cir. 1963), *cert. denied*, 376 U.S. 910 (1964).

Judge Simon's opinion in *Doe v. Trump*, 418 F. Supp. 3d 573 (D. Or. 2019), is of such a kind.  There, plaintiffs challenged an executive order issued by President Trump requiring applicants for immigrant visas to show proof of health insurance before being allowed to enter the United States legally.  In that context, Judge Simon noted that he "may" grant class-wide relief where necessary to preserve the status quo.  *Id.* at 604.  Judge Simon also cited *E. Bay*

Page 16    NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

*Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018), for the proposition that "*[i]n immigration matters*, we have consistently recognized the authority of district courts to enjoin unlawful policies on a universal basis." *Doe*, 418 F. Supp. at 603 (emphasis added).

But none of the exceptions described in these cases apply to the facts of this case, where Plaintiffs seek a class-wide *mandatory* injunction with the intention to force the Nonprofits to disperse grant moneys to class members.[6]  Here, the Court should apply the general rule articulated in *Zepeda* and reaffirmed in *Easyriders* and *M.R.* and decline to enter class-wide injunctive relief prior to class certification.  Indeed, the general rule should apply with particular force given that Plaintiffs' proposed class cannot be certified.

### 2.    Plaintiffs' proposed class action is fatally flawed.

Plaintiffs' allegations of a class action are a sham.  First, because the named Plaintiffs lack standing to obtain the preliminary injunction they seek (discussed further below), "the class lacks standing as well."  *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) (vacating preliminary injunction because the named Plaintiff lacked standing or was incapable of succeeding on the merits).

Second, because Plaintiffs seek a preliminary injunction *before* certification and submit no evidence regarding *any* class member, this Court should find that Plaintiffs' showing in relation to the class is deficient.  As another district court in this Circuit reasoned in reliance on the Ninth Circuit's opinions in *Zepeda*, *Easyriders*, *M.R.*, *L.A. Haven Hospice*, as well as a respected treatise:

---

[6] The only other cases from the Ninth Circuit plaintiffs cite on this question represent examples of the exceptions rather than the rule. *See, e.g.*, *Joyce v. City & Cty. of San Francisco*, 846 F. Supp. 843, 854 (N.D. Cal. 1994) (considering evidence related to non-certified, putative homeless class members because "the class action issue" was delayed and specific evidence offered with respect to putative class members was different than the evidence related to named plaintiffs and changed constitutional analysis); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1154– 57, 1164 (C.D. Cal. 2018) (granting class-wide relief with respect to specifically identified putative class members where specific evidence related to those putative class members was before the court and showed that injunctive relief was necessary to forestall harm against them).

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

> Although Plaintiffs correctly point out that they *may* move for class-wide relief before moving to certify the class, injunctive relief is discretionary and "[c]ourts often refuse such relief until *after* the class is certified, because until then it may be difficult to determine the extent of benefits to the class and consequences to defendant if an injunction is granted." Absent class certification, the rule that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs" applies with special force.

*Korab,* 805 F. Supp. 2d at 1039 (emphasis and alteration in original; citations omitted).  There, the district court found that, despite evidence of possible harm to the named plaintiffs, they failed to present evidence of typicality, any evidence "of the size of the class," or even a consistent, well-defined description of the class.  *Id*. at 1039.  Based on those deficiencies, the district court denied the named plaintiffs' motion for a broad injunction because "[p]laintiffs have failed to give the court any idea as the true scope of the relief requested."  *Id.*  Those same deficiencies are present here.  Plaintiffs provided no evidence supporting their contention that their claims are typical of the class, no evidence regarding the size of the class, and no workable class definition.

Third, Plaintiffs' class definition suffers from obvious and inherent flaws.  Per Plaintiffs, the class would include "all current and future individuals, families, and businesses who: (1) live or are based in Oregon; (2) have experienced or are experiencing hardship due to COVID-19; and (3) do not self-identify as black."  (ECF 32, ¶ 68.)  But Plaintiffs assume that all Oregonians who do not identify as Black hold identical interests in pursuing a fixed, limited, and dwindling pot of money.

Additionally, the definition includes people without regard for whether they are "able and ready" to apply to the Fund for a grant—the standard necessary to have standing for a race-based exclusionary program.  *See Gratz v. Bollinger*, 539 U.S. 244, 261-62 (2003).  Meeting the "able and ready" standard involves facts specific to each person.  For example, in *Carroll v. Nakatani*, 342 F.3d 934, 941-43 (9th Cir. 2003), the Ninth Circuit considered a challenge to a government business loan program that restricted benefits to native Hawaiians.  The Court ruled that the plaintiff lacked standing to assert the challenge to racial preferences because he failed to demonstrate that he was "able and ready" to compete on an equal basis for the loan.  *Id*.

Page 18    NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

Specifically, the plaintiff filed a "symbolic, incomplete application" and did not demonstrate an "ability to compete" for the loan. *Id.* at 942. In particular, the Court noted that the plaintiff had not satisfied the loan program's prerequisite that he seek alternative sources of financing, failed to formulate even a basic business plan, had no work history for the prior 25 years, and had not researched necessary business expenses such as rent or equipment. *Id.* Notably, he did not actually file his application until after he filed the complaint. *Id.* at 941. As such, the Court concluded that the plaintiff had presented only a generalized grievance. *Id.* at 943. *See also Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1185-186 (9th Cir. 2012) (addressing factual deficiencies in plaintiff's showing of standing where plaintiff had "done essentially nothing to demonstrate that he [was] in a position to compete equally," such as submit a quote or a bid).

Here, one named plaintiff has already been denied a grant for reasons unrelated to race and the two others offered evidence to suggest that they were "ready and able" to apply before the Fund closed to new applications. (ECF 39-2, ¶¶ 10-12.) But, plainly, the proposed class exceeds those who were "ready and able" to apply by including all non-Black Oregonians with pandemic-related harm. As such, the proposed class cannot be certified because it includes persons who lack standing. *See, e.g.*, *McDonald v. Corr. Corp. of Am.*, No. CV-09-00781-PHX-JAT, 2010 U.S. Dist. LEXIS 122674, at *8 (D. Ariz. Nov. 4, 2010) ("this definition is overly broad, because it includes individuals who are without standing to maintain an action on their own behalf"); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 490 (S.D. Ill. 1999) ("The definition of a class should not be so broad so as to include individuals who are without standing to maintain the action on their own behalf."); *Vietnam Veterans against War v. Benecke*, 63 F.R.D. 675, 681 (W.D. Mo. 1974) (holding that class action was impermissible because "many, if not most all of the individuals who would be included in the indefinite general purported class, would lack standing to bring such a suit in their own right").

Fourth, even if Plaintiffs belatedly supply a new class definition so that it is neither over-

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

nor under-inclusive of those with standing in relation to the harm alleged by named plaintiffs—which does not seem possible—a class-wide injunction could not fairly and practicably remedy any claimed harm so close to December 30, 2020, when all moneys in the Fund must be committed or revert to the federal government.  Consider:

- A date certain for reopening the Fund to applications would need to be set.
- Fairness dictates that Plaintiffs would have to notify the entire class that the Fund was re-opening to applications, which could take weeks.
- After re-opening, applicants interested in opting into the class would need a reasonable window of time in which to complete and submit applications.
- The Nonprofits would then need a reasonable amount of time to process new applications, get approval from the Council of Trust, and commit moneys from the Fund—a process that could not possibly be accomplished in the 7 business days remaining.[7]
- That processing time could increase dramatically if, on reply, Plaintiffs propose a distribution methodology other than first-come, first-served.  (Sand Decl., ¶ 10.)

The reality is that December 30, 2020 would come and pass long before the mandatory injunction that Plaintiffs seek could result in a commitment of grants to the class as they define it.  That is, the apparent effect of Plaintiffs' proposed injunction would be to force approximately $8 million remaining in the Fund to revert to the State, and then the federal government at the expense of both putative class members and existing applicants.

Fifth, Plaintiffs cannot establish the adequacy of their representation.  *See* Fed. R. Civ. P. 23(a)(4) (requiring adequacy).  Such a showing implicates two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Plaintiffs' proposed class

---

[7] Christmas Eve and Christmas Day are holidays for The Contingent.  (Sand Decl., ¶10.)

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

mires the class and class counsel in conflicts that are likely too numerous to fully delineate.  In relation to a limited, first-come, first-served fund, each applicant's interests are antagonistic to any earlier applicant.  Any applicants currently in line would favor the currently-implemented first-come, first-served prioritization scheme, while every applicant "out of the money" has interests that are best served by some new methodology for prioritizing later-in-line applicants.[8] Further, because business and individual grants are administered separately but draw from the same pool of money, a similar conflict exists in the proposed class as between businesses (represented by Dynamic Service Fire and Security, LLC) and individuals (represented by its owner, Mr. Van Leja).  Plus, the same individual, Mr. Van Leja, could not *de facto* represent both types of class members, even if separate counsel were retained for each type of applicant, which has not happened.  Finally, Plaintiffs' interests conflict with those within the supposed class—and there are doubtless many—who have benefited from or support race-conscious programs but may have objected to the Fund for reasons unrepresented by the proposed class representatives—*e.g.*, they believe *more money* should have flowed to the Fund to provide equitable relief from discrimination; or they believe the Fund need not be available to named Plaintiffs but still should serve a broader mission to provide aid to other minorities that experience discrimination.  These conflicts of interest are "fundamental to the suit" and "go to the heart of the litigation" and, as such, they prevent plaintiffs from satisfying Rule 23(a)(4)'s adequacy requirement.  *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)); Fed. R. Civ. P. 23(a)(4).

These many deficiencies are apparent on the face of Plaintiffs' allegations and arguments. For at least these reasons, the Motion with respect to the putative class should be denied.

---

[8] See also n. 4, *supra*, and pp. 30-31, *infra* (further discussing internal conflicts within the putative class).

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

### C.   The Motion with respect to the Dynamic Service Plaintiffs should be denied because they have no standing to seek injunctive relief

The party invoking federal jurisdiction bears the burden of establishing its existence.  *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  Moreover, that party "must demonstrate constitutional standing separately for each form of relief requested."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  Standing is comprised of three elements, which the Supreme Court has explained:

> First, the plaintiff must have suffered an injury in fact . . .  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and quotation marks omitted; alterations in *Lujan*).

Here, Plaintiffs have not and cannot establish standing to obtain the preliminary injunctive relief they claim for two reasons.  First, even assuming *arguendo* that the Dynamic Service Plaintiffs were suffering an ongoing constitutional harm when the Fund was accepting new applications, no such harm is ongoing now because no applications are being accepted *from anyone*.  Thus, the Dynamic Service Plaintiffs fail to meet the standard set forth in *Carroll v. Nakatani*, 342 F.3d 934 (9th Cir. 2003).  There, the Court held "that to establish standing, a plaintiff need [] demonstrate that it is 'able and ready' to [apply] **and** that a discriminatory policy prevents it from doing so on an equal basis."  *Id.* at 942. (emphasis added).  The Dynamic Service Plaintiffs have no standing under *Carroll's* second prong.  There is currently no "discriminatory policy" that prevents the Dynamic Service Plaintiffs from applying "on an equal basis."  It is the fact that the Fund has closed *to all applicants*—equally—that stands in their way.  They are currently being treated in a non-discriminatory way, equal to everyone else of all races who failed to apply while the Fund was open and applications were being received.

Moreover, the Dynamic Service Plaintiffs' alleged constitutional violations are

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

insufficient to supply standing absent evidence that they are "realistically threatened by repetition of [the alleged violation of constitutional rights]." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). The Fund is now closed.

Second, redressability is also absent. The Dynamic Service Plaintiffs seek an injunction requiring Defendants "to (1) immediately reopen the application process and consider all applications on a race-neutral basis, and (2) stop awarding grants to those who applied under the exclusionary policy until all applications can be considered on a race-neutral basis." (ECF 39-1, p. 16.) But because the Dynamic Service Plaintiffs failed to ever file an application, opening the Fund to new applications would provide no redressability to the Dynamic Service Plaintiffs because the Fund is now closed and all pending applications are being handled on a first-come, first-served basis. Even if the application process is reopened, the Dynamic Service Plaintiffs would be at the back of the line—the consequence of their failure to apply, even while other similarly-situated plaintiffs such as Great Northern and Cocina Cultura did apply. In short, Plaintiffs' alleged injury of lost opportunities to be considered for funding without consideration of race is not "likely to be redressed" by the requested injunctive relief. *Allen v. Wright*, 468 U.S. 737, 751 (1984).[9]

As a parallel to issues of redressability, courts do not grant equitable relief that would amount to no more than a futile gesture. *See Hazel v. U.S. Postmaster General*, 7 F.3d 1 (1st Cir. 1993) (in discrimination claim, rejecting equitable relief that would be "futile"); *see also U.S. v. Town of Cicero*, 786 F.2d 331, 338 (7th Cir. 1986) (Posner, J., dissenting) ("Of course the government would have no equity in pressing for a futile order."); *Panda v. Wolf*, No. 20-cv-1907(APM), 2020 U.S. Dist. LEXIS 169052, at *15 (D.C. Cir. Sept. 16, 2020) (denying preliminary equitable relief seeking processing of DS-160 visa applications within 14 days

---

[9] Any further relief Plaintiffs might propose on reply to avoid the redressability issue is waived. *See* LR 7-1(b) (motions may not be combined with replies); *Marquard v. New Penn Fin., LLC*, No. 3:17-cv-549-SI, 2017 U.S. Dist. LEXIS 155209, at *28 (D. Or. Sep. 22, 2017) ("Because this argument was first raised in a reply brief and is not based on new or changed law, it is waived.").

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

because "such swift processing would be an exercise in futility when Plaintiffs would remain ineligible to enter the country until January 1, 2021, at the earliest"). Here, the relief requested would be futile for the same reasons the Dynamic Service Plaintiffs lack standing: even if the Court grants their motion, the Dynamic Service Plaintiffs' applications would not get funded because they simply waited too long and would be at the end of a line that is already too long. Plaintiffs failed to address—or even acknowledge—this issue, which is fatal to their ability to pursue preliminary injunctive relief.

Finally, with respect to BUF, the only plaintiff with any claims against it is Mr. Van Leja. But Mr. Van Leja does not allege, nor could he, that BUF is the cause of his harm. Rather, BUF is a subcontractor of The Contingent in charge of processing applications. (Sand. Decl., ¶ 3.) BUF is not a direct grant recipient of the Cares Act funds, nor does it have access to the bank account where The Fund resides, nor does it make decisions as to who gets a distribution from the Fund. *Id.* To obtain relief against BUF, Mr. Van Leja must allege that BUF can redress his harm. Because BUF had no control over the criteria applied, the application process, or the Fund itself, it has no power to redress any alleged harm.

### D.    The Dynamic Service Plaintiffs fail to establish that the "facts and law clearly favor" them on the three hardship factors

#### 1.    Plaintiffs fail to meet their burden to establish an imminent, irreparable harm because they waited too long.

To obtain injunctive relief, the Dynamic Service Plaintiffs are obligated to establish irreparable harm. *See Winter*, 555 U.S. at 22 (requiring same). They fail to do so. First, they have no injury for the same reason they have no standing—they are simply too late. They seek admission to an application process that is closed and oversubscribed. Their claimed injury, that they were denied the ability to compete for the Fund in violation of the Fourteenth Amendment and Title VI, might have been ongoing in August, September, October or even November. But that harm ended as soon as the Fund closed to everyone. After December 8, no one could compete for the Fund *regardless of race*. Therefore, their alleged harm occurred, is over, and is

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

not likely to recur.  Even if the Fund reopened, they would be at the back of the line.  Like the others populating the back of the line, their application would never get touched, because the Fund is more than $800,000 oversubscribed.

Second, the Dynamic Service Plaintiffs' claim, like those of Great Northern and Cocina Culture before it, is a claim for <u>money</u>.[10]  The refusal to give a fixed sum of money is the *sine qua non* of a monetizeable injury.  If this case is ripe for a preliminary injunction, then every case would be.  Plaintiff cannot escape the simple truth that Plaintiff's ultimate injury is about failing to receive a quantifiable sum of money, which is, by definition, not irreparable.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm.*, 259 F.2d 921, 925 (D.C. Cir. 1958))); *L.A. Mem'l Coliseum Comm. v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("It is well established . . . that such monetary injury is not normally considered irreparable").

Third, the Dynamic Service Plaintiffs' excessive delay undercuts any alleged irreparable injury.  In their Amended Complaint, the Dynamic Service Defendants admit that they suffered hardships due to the COVID-19 pandemic as early as May or June.  (ECF 32, ¶ 40.)  The Fund opened the applications process in August 2020, four months ago.  Cocina Cultura was diligent.  Even though it was not a Black-owned business, it filed an application seeking Oregon Cares Act funds in August.  Great Northern, a business owned by a white man, filed its application in October.  (*Id.*, ¶ 23.)  They then both filed lawsuits seeking injunctive relief.  In response to their motions, Defendants posted bonds with the Court to ensure funds would be available in the event their lawsuits should succeed.

But the Dynamic Service Plaintiffs took a different approach.  Dynamic Service applied

---

[10] *See* 42 U.S.C. § 2000d-7.

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

for a small business grant on November 18, 2020, but admitted in the Amended Complaint that the process was overwhelmed by applicants within a few hours, and it was out of the money—obviously the result of a first-come, first-served application process. (ECF 32, ¶ 41.) And on December 7, The Contingent advised the Court that the Fund would be closing—a further indication that those first in line had been served, and the money was running out. *Cocina Cultura*, Dec. 7, 2020 Hearing Tr. at 17-18. But the Dynamic Service Plaintiffs deliberately decided ***not*** to apply for a grant. They said that they "intend[] to apply and will apply for relief from the Fund if and when the courts enjoin the enforcement of the racial exclusions." (ECF 32, ¶ 42.) Knowing the Fund was finite is both amount and duration, they deliberately let the doors close.

Now, with only seven business days to go before the money reverts to the federal government, the Dynamic Service Plaintiffs seek a mandatory injunction. As this Court noted in its opinion denying relief in *Cocina Cultura*,

> Plaintiff's claims of irreparable harm are further undercut by its delay in seeking relief. Plaintiff's business closed on August 22, 2020, and it suffered its alleged injury on August 31, 2020, when it applied for a grant. Plaintiff waited nearly three months to initiate this lawsuit, and another five days to file this Motion. . . . Plaintiff's nearly three-month delay in seeking injunctive relief "implies a lack of urgency and irreparable harm."

*Cocina Cultura*, ECF 36, pp. 8-9 (citing *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984); *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985). The Dynamic Service Plaintiffs' timing is far worse. It admits to feeling the effects of COVID-19 months earlier than Cocina Cultura, yet decided to ***never*** apply for a grant, even when its attorneys knew the window was closing. Moreover, after it entered the case, it waited five days to file the instant Motion. Even more than Cocina Cultura, their excessive delay "implies a lack of urgency and irreparable harm." *Id.*[11]

---

[11] Besides their irreparable harm problem, the Dynamic Service Plaintiffs' delay gives rise to laches, which may preclude entry of a preliminary injunction, even if other remedies remain available to the Plaintiffs. *Ariz. Libertarian Party v. Regan*, 189 F. Supp. 3d 920, 925 (D. Az. 2016).

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

For each of these reasons, the Dynamic Service Plaintiffs fail to establish irreparable injury.

> **2.      *The balance of equities weigh against any relief because the injury to the Nonprofits, forcing them to violate their mission, cannot be compensated by Plaintiffs.***

The balance of equities factor requires the court to weigh and compare the damage to each party.  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009).  The Nonprofits both have a mission service to Oregon's Black community.  (Sand Decl., ¶12.)  This is the backbone of the trust they earn from the public, their goodwill, and their fundraising efforts.  (*Id.*)

The State acknowledged the desperate need for targeted relief for the Black community when it granted funds to The Contingent for the express purpose of The Contingent making pandemic-related grants to (i) Black Oregonians; and (ii) Black-owned businesses and Black-run nonprofits.  (Sand Decl., ¶ 2, Ex. 1, Grant Agreement.)  Making grants for those narrow and exclusive purposes is The Contingent's guiding mission in relation to the Fund.

The harm a preliminary injunction would visit on the Nonprofits is significant and irreparable.  Plaintiffs' demand is that the Nonprofits violate their missions and their implicit commitments to Oregon's Black community.  Their only choices would be to betray Black Oregonians by either (a) diverting funds away from the Black community in a time of its disproportionate suffering; or (b) despite that community's urgent needs, halting all expenditures to anyone because it becomes impossible to reprocess the applications before December 30 and the Funds revert to the State, and thereafter to the federal government.  (Sand Decl., ¶ 2, Ex. 1, Grant Agreement.)  Either of those choices impairs The Contingent's and BUF's reputation, standing with Oregon's Black community, goodwill with the other communities that they serve, and potentially their ability to raise funds.  (Sand Decl., ¶ 11); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

Even if Defendants prevail at a trial on the merits, there would be no way for the Nonprofits to be compensated for the significant damage done to them by injunctive relief. That is, regardless of whether this Court accepts Plaintiffs' putative irreparable harm, they have failed to establish that the balance of equities <u>clearly</u> favors entry of an injunction. *Garcia.*, 786 F.3d at 740 (requiring same for entry of mandatory injunction).

### 3. *The public interests weigh against any relief.*

Whereas the balance of equities focuses on the parties, "[t]he public interest inquiry primarily addresses impact on non-parties rather than parties" of employing "the extraordinary remedy of injunction." *Bernhardt v. Los Angeles Cty.*, 339 F.3d 920, 931-32 (9th Cir. 2003) (quotation marks and citations omitted). Here, the Dynamic Service Plaintiffs fail to establish that the public interest factor clearly favors them.

At root, the Dynamic Service Plaintiffs' argument on this factor is a mere reframing of its separate contention that it is likely to succeed on the merits. Plaintiffs' tactic of trying to "collapse" the hardship factors into the merits one is common, but impermissible. *Dish Network Corp. v. FCC*, 653 F.3d 771, 776 (9th Cir. 2011). Plaintiffs need to make some further showing if countervailing public interests are present. *See Pashby v. Delia*, 709 F.3d 307, 330 (4th Cir. 2013) ("[T]he district court could find that the likelihood of success on the merits satisfied the public interest prong *only if* other considerations did not meaningfully weigh on that factor." (Emphasis added.)); *Pac. Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1229 (D. Or. 2016) (Simon, J.) (following same).

Here, the preliminary injunction that Plaintiffs seek *would harm* the public interest. First, delaying or denying funds from reaching Oregon's Black community harms the public's interest because, at a minimum, it would only exacerbate the disparate impacts the pandemic is having in Oregon. (*See, e.g.*, ECF 32, ¶ 59 (Plaintiffs do not dispute evidence that "members of the Black community have been disproportionately impacted by the pandemic").) That community needs immediate and exceptional aid. Such aid, given the disparate impact, is absolutely in the public

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

interest—a fact confirmed by the legislature's decision to grant money to the Contingent to seed the Fund. *See Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency*, 766 F.2d 1319, 1324 (9th Cir. 1985) (courts "may define the public interest by reference to the policies expressed in legislation").

Second, and relatedly, the Dynamic Service Plaintiffs must obtain more than their motion actually seeks. The only relief they actually seek is having the applications process reopened and their application considered on a race-neutral basis. But that alone gets them nowhere—it is nothing more than the right to go at the back of a too-long line for an oversubscribed Fund. Such relief would not even get their application considered; like the others at the back of the line, their application will never see the light of day.

In their Motion, Plaintiffs failed to address—or even acknowledge—the problems posed by the fact that the Fund has closed, and that the last of the pending applications are being handled on a first-come, first-served basis—facts they knew when they filed their motion. Rather, at the December 11 Status Conference, after learning the futility of the relief actually sought in their Motion, Plaintiffs suggested that they may argue for the first time on reply that the Court should *also* order a new, as-yet-unidentified prioritization scheme for handling any new application. But such a reprioritization would invariably harm the public interest. That is because existing and future applicants that *are already eligible* for grants from the Fund would have their relief delayed or outright denied by Plaintiffs' proposed injunction. That includes applicants like Next Level Hair Design and Ms. Perry and her disabled daughter—applicants who are in desperate need for grants from the Fund. In sum and substance, what Plaintiffs would seek is to have Mr. Van Leja, who never bothered to fill out applications, jump in line in front of others who took the trouble to apply. It is impossible to disguise that, should the Court grant this extraordinary relief, new, white applicants would be given preferential treatment over existing applicants like Next Level Hair Design and Ms. Perry—those who took the time to fill out an application while the Fund was still receiving them. Metaphors are hardly required to conjure

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone: 503.222.9981 Fax: 503.796.2900

the imagery that Plaintiffs' proposed mandatory injunction would invoke—a whites-to-the-front, Blacks-to-the-back demand, literally.  Such relief defies the very notion of public interest.

Third, following the forthcoming hearing on the instant Motion, there are literally seven business days left before any uncommitted money reverts to the federal government.  The Contingent still has $8 million to grant before this happens.  It would be exceedingly difficult, and likely impossible, to reopen the application system and consider any new applications based on any sort of new prioritization scheme.  The basic programming of the application system starts with a time stamp on the application.  Even if The Contingent could have that feature reprogrammed quickly, applying a new, as-yet undetermined prioritization scheme, applications from the Dynamic Service Plaintiffs and the putative class would still fall to the bottom.  Many of the applications in the pool are fully or partially processed.  Any new applications would have to start from the beginning.  They will, therefore, take longer to process and will, even if a new prioritization scheme is used, fall to the bottom of the pile.  To create a fair playing field, The Contingent would have to *un*process all of the 7,260 applications in the queue and then start reprocessing all of them from the beginning so each had the same chance to receive the limited funding available.  It would be impossible for The Contingent and BUF to process all of the pending applications along with even one new application with a new prioritization scheme by December 30, 2020.  (Sand Decl., ¶ 10.)

The Dynamic Service Plaintiffs seek to upend the first-come, first-served process with an as-yet-unidentified and as-yet unbriefed court-ordered prioritization process for handling future applications.  Embarking on such a task would likely result in the grant-making process being thwarted in these remaining days, depriving existing applicants of the opportunity to receive this federal relief and depriving the State of Oregon the use of federal funds.

Moreover, such a process would pose new, complicated questions.  For example, it seems evident the Dynamic Service Defendants would want a process that prioritizes their new applications over the applications of pending applicants.  But what about Great Northern's

Page 30     NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

application, or Cocina Cultura's application?  Should the Dynamic Service Defendants be given preferential treatment over their co-plaintiffs, to the funds that are currently secured with the Court?  Which applicants would be out of the money owing to the Dynamic Service Plaintiffs' late admittance to the process?  Next Level Hair Design knew that the funds it applied for were being distributed on a first-come, first served basis.  (Bell Decl., ¶ 8.)  Does it not have a right to rely on that?  Ms. Perry and her disabled daughter, who are about to be evicted because of COVID-19, are toward the back of the line already, having applied on the last day the Fund was receiving applications.  Will the new process configure the order altogether, possibly placing Ms. Perry at the front?  Or will it merely let the white applicants jump ahead of her?

It would be impossible to create a new process taking into regard the rights of all applicants in line, and to implement that process within only seven days.  The net effect of such an effort would, in all likelihood, result in substantial funds remaining unallocated by December 30, and reverting to the federal government, thus depriving well-meaning applicants like Next Level Hair Design and Ms. Perry of the opportunity to receive federal relief.  The Court should decline to embark on the task of restructuring The Contingent's orderly and well-established sequence for considering and allocating funds on such late notice.

Finally, any order that results in The Contingent being unable to perform its fiduciary and contractual obligations to distribute the Fund by December 30th will cause a reversion of the Fund back to the federal government.  In that case, each resident of the State of Oregon suffers.  The Black community will suffer and require greater public resources to emerge from COVID-19, resulting in fewer State resources for other very important work.  The Fund is ultimately federal money offered to Oregon.  If Oregon cannot manage it, it loses it and must pay for COVID-19 relief with its own funds.  Therefore, any action that results in a reversion is against the public interest.

These public harms must loom large in the Court's consideration of Plaintiffs' motion. *See Winter*, 555 U.S. at 24 (requiring courts to "pay particular regard for the public

Page 31   NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900

consequences").  And because the State's public interest in providing egalitarian emergency relief as well as the urgent needs of existing Black-identifying applicants for funding cannot truly be protected by an injunctive bond, these public harms should preclude entry of even a temporary restraining order.  *See Weinberger*, 456 U.S. at 312-13 (recognizing same).

In sum, this Court should deny a preliminary injunction because the Dynamic Service Plaintiffs failed to establish that the equitable factors favor them.  As to each equitable component—irreparable injury to plaintiff, harm to defendants, and public harm—Plaintiffs have failed to carry their burden of establishing that "the *facts and law* clearly favor the moving party."  *Garcia*, 786 F.3d at 740 (quotation marks and citation omitted; emphasis added).  Indeed, the harm to the Nonprofits and those they are serving weigh heavily against entry of a temporary restraining order.

## CONCLUSION

In short, Plaintiffs are too late.  Whether stated in terms of laches, lack of redressability necessary to establish standing, futility, or lack of irreparable harm, this eleventh hour motion to stop a process that has been in place for ***four months***, and ends in ***seven business days***, is simply too late.  For the reasons stated herein, Plaintiffs' motion should be denied in its entirety.

DATED this 16th day of December, 2020.

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By:    *s/ Nika Aldrich*
       Amanda T. Gamblin, OSB # 021361
       Nika Aldrich, OSB #160306
       Attorneys for Defendants The Contingent
       and The Black United Fund of Oregon

NONPROFIT DEFENDANTS' OPPOSITION TO THE *GREAT NORTHERN* PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone: 503.222.9981 Fax: 503.796.2900