BENBROOK LAW GROUP, PC
BRADLEY A. BENBROOK*
STEPHEN M. DUVERNAY*
400 Capitol Mall, Suite 2530
Sacramento, CA 95814
Telephone: (916) 447-4900
brad@benbrooklawgroup.com

MITCHELL LAW PLLC
JONATHAN F. MITCHELL*
111 Congress Avenue, Suite 400
Austin, TX 78701
Telephone: (512) 686-3940
jonathan@mitchell.law

MURPHY & BUCHAL LLP
JAMES L. BUCHAL
3425 SE Yamhill Street, Suite 100
Portland, OR 97214
Telephone: (503) 227-1011
jbuchal@mbllp.com

*Admitted *pro hac vice*

Counsel for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| GREAT NORTHERN RESOURCES, INC., DYNAMIC SERVICE FIRE AND SECURITY, LLC, and WALTER VAN LEJA, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KATY COBA, in her Official Capacity as State Chief Operating Officer and Director of the OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES; OREGON DEPARTMENT OF ADMINISTRATIVE SERVICES; THE CONTINGENT; BLACK UNITED FUND OF OREGON and DOES 1-10,<br><br>Defendants. | Case No.: 3:20-cv-01866-IM (Lead Case)<br>Case No.: 3:20-cv-02022-IM (Trailing Case)<br><br>**PLAINTIFF GREAT NORTHERN RESOURCES, INC.'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: June 21, 2021<br>Time: 2:00 p.m.<br>Judge: Hon. Karin J. Immergut<br>Courtroom: 13A |

# TABLE OF CONTENTS

MOTION ................................................................................................................................ 1

I.  INTRODUCTION .......................................................................................................... 2

II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND ..................................... 3

  A.  The Oregon Emergency Board Allocates $62 Million to Create the Fund, and Great Northern, Dynamic, and Van Leja Sue to Enjoin the Fund's Operation ...... 3

  B.  The Parties Negotiate Settlements to Resolve The Class Claims of Fund Applicants and Dynamic and Van Leja's Individual Claims ................................. 5

III. SETTLEMENT TERMS AND CLASS ADMINISTRATION ......................................... 6

IV. ARGUMENT ................................................................................................................. 7

  A.  The Settlement Class Should Be Finally Certified And Great Northern Should Be Confirmed As The Class Representative ............................................. 7

    1.  The Settlement Class Meets the Requirements of Rule 23(a) ................... 7

    2.  The Settlement Class Meets the Requirements of Rule 23(b)(3) .............. 11

  B.  The Court Should Reaffirm Appointment of Class Counsel ............................. 13

  C.  This Settlement Satisfies the Criteria for Final Approval ................................. 15

    1.  The Class Representatives and Class Counsel Have Vigorously Represented the Class ............................................................................. 16

    2.  Class Counsel Negotiated the Settlement at Arms' Length ..................... 16

    3.  The Relief Provided by the Settlement Represents a Strong Recovery, Taking into Account the Costs, Risks, and Delay of Trial and Appeal ... 19

      a.  The Proposed Settlement Outweighs the Costs, Risks, and Delay of Trial and Appeal ............................................................. 19

      b.  The Proposed Method of Distributing Relief to the Class is Highly Effective ......................................................................... 20

      c.  The Proposed Award of Attorney's Fees Is Fair ........................... 21

    4.  The Proposed Settlement Treats Class Members Equitably .................... 21

  D.  Plaintiffs Have Provided Adequate Notice ....................................................... 22

V.  CONCLUSION ............................................................................................................. 23

**Cases**

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ............................................................................ 15

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) .......................................................................................... 15

*Azar v. Blount Int'l, Inc.,*
    No. 3:16-CV-0483-SI, 2019 WL 7372658 (D. Or. Dec. 31, 2019) .................... 17

*Barbosa v. Cargill Meat Sols. Corp.,*
    297 F.R.D. 431 (E.D. Cal. 2013) ...................................................................... 20

*Bell v. Consumer Cellular, Inc.,*
    No. 3:15-CV-941-SI, 2017 WL 2672073 (D. Or. June 21, 2017) ...................... 20

*De Leon v. Ricoh USA, Inc.,*
    No. 18-CV-03725-JSC, 2020 WL 1531331 (N.D. Cal. Mar. 31, 2020) .............. 18

*Doe #1 v. Trump,*
    335 F.R.D. 416 (D. Or. 2020) ............................................................................. 8

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ............................................................................... 8

*G.F. v. Contra Costa Cty.,*
    2015 WL 4606078 (N.D. Cal. July 30, 2015) ................................................... 17

*Giles v. St. Charles Health Sys., Inc.,*
    294 F.R.D. 585 (D. Or. 2013) ............................................................................. 9

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .................................................................... passim

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ............................................................................... 8

*Harrison v. Harry & David Operations, Inc.,*
    No. 1:18-CV-00410-CL, 2020 WL 8367533 (D. Or. Oct. 21, 2020) ................... 9

*Hudson v. Libre Tech. Inc.,*
    No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060 (S.D. Cal. May 13, 2020) ...... 16

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ....................................................................... 17, 18

*In re Google LLC St. View Elec. Commc'ns Litig.,*
    No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ............ 11

*In re Hyundai & Kia Fuel Econ. Litig.,*
    926 F.3d 539 (9th Cir. 2019 ................................................................... 11, 15, 22

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015).................................................................................9

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
   No. 3:15-MD-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019).........................7, 8

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007)..................................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018).................................................................................10

*Janus v. Am. Fed'n of State, Cty., and Mun. Emps., Council 31*,
   138 S. Ct. 2448 (2018)..........................................................................................14

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012).................................................................................15

*Loomis v. Slendertone Distribution, Inc.*,
   No. 19-CV-854-MMA (KSC), 2021 WL 873340 (S.D. Cal. Mar. 9, 2021).............21

*Magallon v. Robert Half Int'l, Inc.*,
   311 F.R.D. 625 (D. Or. 2015)...........................................................................12, 13

*Moore v. PetSmart, Inc.*,
   728 F. App'x 671 (9th Cir. 2018).........................................................................10

*Moreno v. Beacon Roofing Supply, Inc.*,
   No. 19cv185 (LL), 2020 WL 1139672 (S.D. Cal. July 13, 2020)..........................20

*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)..........................................................................19

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010).............................................................................8

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)...........................................................................17, 22

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018).................................................................................10

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003).................................................................................10

*Stewart v. Applied Materials, Inc.*,
   No. 15-CV-02632-JST, 2017 WL 3670711 (N.D. Cal. Aug. 25, 2017)...................18

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016)...............................................................................11

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996).................................................................................12

*Walker v. Life Ins. Co. of the Sw.*,
   953 F.3d 624 (9th Cir. 2020).................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................................................... 8

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................................. 11, 12, 13

**Statutes**

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................ 22

Fed. R. Civ. P. 23(e)(1)(B) ........................................................................................................ 22

Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 16

Fed. R. Civ. P. 23(e)(2)(A) ....................................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(B) ....................................................................................................... 16

Fed. R. Civ. P. 23(e)(2)(C) ................................................................................................. 19, 20

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................................................. 21

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................................................... 21

**Other Authorities**

7AA Charles Alan Wright et al., Federal Practice and Procedure § 1779 (3d ed. 2005) ............... 12

Rubenstein, 4 Newberg on Class Actions § 13:48 (5th ed.) .......................................................... 16

Rubenstein, 4 Newberg on Class Actions § 13:53 (5th ed.) .......................................................... 20

# <u>MOTION</u>

Pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 94) and Federal Rule of Civil Procedure 23(e), plaintiff Great Northern Resources, Inc. respectfully moves the Court for an order:

1.      Finally certifying the settlement class as proposed under Rule 23(a) and (b)(3);

2.      Confirming Great Northern's appointment as the representative of the settlement class;

3.      Confirming the appointment of the following attorneys as class counsel: Jonathan Mitchell of Mitchell Law PLLC; Bradley Benbrook and Stephen Duvernay of Benbrook Law Group, PC; and James Buchal of Murphy & Buchal LLP.

4.      Granting final approval to the proposed settlement as "fair, reasonable, and adequate" under Rule 23(e).

The motion is based on the below Memorandum; the Declarations of Class Counsel, Victoria Urdaneta, and Clifford S. Davidson; matters subject to judicial notice; the record in this case; and any additional argument or evidence the Court may consider.

## I. INTRODUCTION

The proposed settlement of this civil rights case on a class-action basis is "fair, reasonable, and adequate": The State Defendants committed to process the grant applications of a settlement class of nearly 1,200 individuals, businesses, and nonprofits that applied to the Oregon Cares Fund for Black Relief and Resiliency (the "Fund"). The class members were ineligible for relief from the Fund because their applications did not indicate that the applicant identifies as Black, or as a Black-owned business or Black-focused organization. Under the settlement, the class members' applications will be processed without regard to the racial exclusion, and, if they are otherwise eligible, they will receive cash grants: Eligible individual applicants will receive $1,000; eligible family applicants will receive $3,000; and eligible businesses will receive grants ranging from a few thousand to more than $100,000 (up to a maximum of $200,000). The State Defendants estimate, based on Class Members' application data, that the settlement payments could be as high as $3.5 million.

The Court granted preliminary approval of the proposed settlement on March 19, 2021. (ECF No. 94). Over the past two months, the settlement administrator provided direct notice to all 1,155 members of the settlement class. As of May 6, 2021, SSI has received only three valid opt-out notifications. The overwhelming response of the class members confirms that the settlement is fundamentally fair.

The Class satisfies the requirements for certification under Rule 23(a) and (b)(3), and the fully-implemented, Court-approved notice program satisfies Rule 23 and due process requirements. Accordingly, Plaintiff Great Northern request that the Court:

1.  Certify the settlement class as proposed under Rule 23(a) and (b)(3);

2.  Confirm Great Northern's appointment as the representative of the settlement class;

3.  Confirm the appointment of the following attorneys as class counsel: Jonathan Mitchell of Mitchell Law PLLC; Bradley Benbrook and Stephen Duvernay of Benbrook Law Group, PC; and James Buchal of Murphy & Buchal LLP; and

4. Grant final approval to the proposed settlement as "fair, reasonable, and adequate" under Rule 23(e).

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**A. The Oregon Emergency Board Allocates $62 Million to Create the Fund, and Great Northern, Dynamic, and Van Leja Sue to Enjoin the Fund's Operation.**

This lawsuit concerns the Oregon Emergency Board's allocation of $62 million of federal CARES Act money to Defendant Oregon Department of Administrative Services ("DAS") for the purpose of creating a fund available only to Oregon-based businesses majority-owned by persons self-identifying as Black; Oregon-based community organizations primarily serving the Black community; and Oregon-based individuals who self-identify as Black. That Fund is known as the Oregon Cares Fund for Black Relief and Resiliency (the "Fund").[1] (ECF No. 42-1 at 1–3). DAS entered into a contract with defendant The Contingent, an Oregon-based non-profit, to administer the Fund. *Id.* The Contingent subcontracted with Black United Fund of Oregon, Inc. to process certain of the applications.

On October 29, 2020, plaintiff Great Northern Resources, Inc. ("Great Northern") sued to challenge the Fund under the Equal Protection Clause, Title VI of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. (ECF No. 1). Great Northern quickly moved for a temporary restraining order and preliminary injunction to prevent the Fund from continuing distribute grants on a racially-exclusionary basis. (ECF No. 12). The Contingent offered to deposit into the Court registry the maximum amount any business applicant could obtain ($200,000), and the Court denied Great Northern's request for an injunction. (ECF No. 28).

On December 6, 2020, Plaintiffs filed a First Amended Class-Action Complaint. (ECF No. 32). The Amended Complaint added named Plaintiffs Dynamic Service Fire and Security, LLC ("Dynamic") and Walter Van Leja. Great Northern, Dynamic, and Van Leja sued on behalf of themselves as well as a class defined as "all current and future individuals, families, and

---

[1] Class Counsel attest to the information set forth in the procedural history and factual background in paragraphs 2–19 of their Joint Declaration.

businesses who: (1) live or are based in Oregon; (2) have experienced or are experiencing hardship due to COVID-19; and (3) do not self-identify as [B]lack, and who therefore have been or are currently being disqualified from the relief from the Fund on account of race." *Id.*, ¶ 68. The Amended Complaint also named Black United Fund as a defendant.

Immediately after Plaintiffs sued on a class-action basis, The Contingent announced (on December 8, 2020) that it would no longer accept applications because The Contingent had received more applications than could be funded through the remaining Fund balance. (ECF No. 65 at 4; *see also* ECF No. 45 at 6–7).

On December 11, 2020, Plaintiffs moved for a temporary restraining order and preliminary injunction to (1) reopen the application process for grants from the Fund and consider all applications on race-neutral basis, and (2) stop awarding grants to those who applied under the exclusionary policy until all applications could be considered on a race-neutral basis. (ECF No. 39). Defendants' oppositions raised several theories, including that the Fund withstood strict scrutiny, that Great Northern had not suffered irreparable injury, that injunctive relief was inappropriate on a class-wide basis, and that Dynamic and Van Leja lacked standing to seek injunctive relief because they had not applied. (ECF Nos. 56 (State Defendants' Response) & 45 (Nonprofit Defendants' Opposition)). In addition, the Court ordered the parties to provide supplemental briefing on potential mootness and standing issues. (ECF No. 44).

After briefing, The Contingent informed the Court it would deposit the remaining balance of the Fund into the Court's registry ($8,814,120.00); thus, the Court denied Plaintiffs' request as moot and accepted The Contingent's deposit. (ECF No. 59). In all, Defendants deposited a total of $9,014,120.00 in Fund monies with the Court (the "GNR Deposit"). With this deposit, the Fund's operation was effectively ended until the Court made a ruling on the merits or the parties settled.

On December 29, 2020, Defendants submitted briefs to the Court addressing the standing of non-applicants – *i.e.*, whether those individuals, businesses, and nonprofits, who did not apply before the Fund closed, could pursue any claim for relief. (ECF No. 65). This included

Dynamic and Mr. Van Leja. (*Id.*; *see also* ECF No. 32. ¶¶ 42, 47). The Court deferred ruling on this question.

**B.    The Parties Negotiate Settlements to Resolve The Class Claims of Fund Applicants and Dynamic and Van Leja's Individual Claims.**

On December 18, 2020, the Court ordered the parties to attend a settlement conference within 60 days. (ECF No. 59). Class Counsel and counsel for the Defendants began engaging regarding potential settlement terms.

On January 12, 2021, the parties attended a settlement conference with Judge Mosman, which did not result in immediate settlement. (ECF No. 78). But the parties deferred litigation and engaged in continuous settlement discussions through January and February 2021.

After extensive negotiations, the parties reached two settlements: (1) an agreement to settle Great Northern's claims in conjunction with the Court's certification of a settlement class pursuant to Fed. R. Civ. P. 23(e), including, among other things, the establishment of a settlement fund (separate from the Fund) for the processing of applications on a race-neutral basis; and (2) the State Defendants' agreement to settle Dynamic and Van Leja's individual claims, a component of which involved the immediate release of $5.3 million of the GNR Deposit to be disbursed immediately to Fund applicants, and provided a payment of $75,962.00 for attorneys' fees and costs.

On March 12, 2021, the parties filed a Joint Motion for preliminary approval of the class action settlement (ECF No. 85) and a Notice of Settlement as to Dynamic and Van Leja's claims (ECF No. 88). On March 19, 2021, the Court issued an order granting preliminary approval of the class action settlement ("Preliminary Approval Order"). (ECF No. 94). On March 25, 2021, the Court issued an order approving the Dyamic and Van Leja settlement (ECF No. 97) and ordered the Clerk to withdraw and disburse $5,300,000 of the GNR Deposit to The Contingent (ECF No. 98).

//

### III. SETTLEMENT TERMS AND CLASS ADMINISTRATION

In the Preliminary Approval Order, the Court provisionally appointed Great Northern as class representative, and certified the following settlement class pursuant to Fed. R. Civ. P. 23(b)(3) and (e):

> All individuals, businesses, and nonprofits that submitted applications for funding to the Fund and/or The Contingent prior to December 9, 2020, and that have not indicated on their applications that they identify as Black, are a Black-owned business, or are a Black-focused organization.

Preliminary Approval Order at 2.

Class Members who do not opt out of the Settlement Class will be eligible to have their Fund applications processed on a race-neutral basis and receive funding as appropriate based on the Class Members' applications to the Fund. Proposed Settlement ¶¶ 58-59. The Settlement Administrator will process these applications in order of receipt by The Contingent. Under the Settlement Agreement, based on application data compiled from the Class Members' applications, the State Defendants estimate that the State will deposit roughly $3.5 million with the Administrator for class payments. Proposed Settlement ¶¶ 36, 44, 77.

With the consent of the parties, the State retained Settlement Services, Inc. ("SSI") to serve as the Settlement Administrator.

After the Preliminary Approval Order was entered, SSI implemented the Court-approved notice program. On April 5, 2021, Defense Counsel provided SSI with two spreadsheets (the "Class Lists") that included the name, verification scores, mobile numbers, emails, address, organization name, organization owner, award amount, calculations, number of employees, board, and executive demographics for one thousand two hundred twenty-three (1,223) family records and twenty-eight (28) non-profit businesses. Urdaneta Decl., ¶ 3. SSI identified 96 duplicate records which were then combined bringing the Class List to a total of 1,155 Class Members. *Id.*

On April 8, 2021, SSI provided notice by email to 1,155 members of the settlement class. Urdaneta Decl., ¶ 4. On April 9, 2021, SSI provided notice packets by first-class mail to 15

members of the settlement class whose email notices were returned as undeliverable. *Id.*, ¶ 5–6. As of May 6, 2021, one original notice packet was returned to SSI by the USPS as undeliverable without forwarding address information. *Id.*, ¶ 7. SSI conducted a locator trace for the Class Member with a returned Notice prior to the postmark deadline, and no new possible address was obtained for this Class Member. *Id.*

SSI also established a settlement website, https://www.oregoncaresfundsettlement.com, where class members can review the notice, settlement agreement, and preliminary approval order; provide their payment information for direct deposit of settlement funds; and review frequently asked questions about the settlement and their legal rights.

The deadline for Class Members to request exclusion from the class is a postmark deadline of May 28, 2021. Preliminary Approval Order at 4. Preliminary Approval Order at 4. As of May 12, 2021, SSI received only <u>three</u> valid opt-out notifications; SSI had received twelve invalid email requests for exclusion that did not comply with the Court's order. Urdaneta Decl., ¶ 9. SSI followed up with class members who sent invalid opt-out requests and let them know how to properly exclude themselves from the class under the Court's order. *Id.*

The deadline for Class Members to object to the Settlement is a postmark deadline of May 28, 2021. As of May 12, 2021, SSI has received no objections. Urdaneta Decl., ¶ 10.

## IV. ARGUMENT

### A. The Settlement Class Should Be Finally Certified And Great Northern Should Be Confirmed As The Class Representative.

The Court should grant final certification of the Settlement Class because the Class satisfies the requirements of Rule 23(a) and 23(b)(3).

#### 1. The Settlement Class Meets the Requirements of Rule 23(a).

Under Rule 23(a), a plaintiff seeking class certification must show that the proposed class meets the requirements of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *2 (D. Or. July 29, 2019). Those requirements are met here.

**Numerosity.**  There are 1,155 class members, which is plainly sufficient to meet the numerosity requirement.  "In this district, there is a 'rough rule of thumb' that 40 class members is sufficient to meet the numerosity requirement."  *Premera*, 2019 WL 3410382 at *10; *see also Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

**Commonality.**  "To satisfy the commonality requirement, a representative plaintiff must show that the putative class members suffered the 'same injury,' i.e., that their claims depend on a 'common contention.'"  *Doe #1 v. Trump*, 335 F.R.D. 416, 431 (D. Or. 2020) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  The commonality requirement "has been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  And commonality is met where plaintiffs "pose a question that 'will produce a common answer to the crucial question'" such that "a classwide proceeding [will] generate common answers apt to drive the resolution of the litigation."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Dukes*, 564 U.S. at 352).  The Settlement Class presents common facts: Each Class Member applied to the Fund before 11:59:59 p.m. on December 8, 2020, but did not indicate that the applicant identifies as Black, or as a Black-owned business or Black-focused organization.  And the Settlement Class presents common questions of law that will generate a common answer to the crucial question: Whether the Fund's use of race-based criteria violated the Equal Protection Clause and federal anti-discrimination statutes.

**Typicality.**  "To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class."  *Ellis*, 657 F.3d at 984.  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."  *Id.*  "This Court has noted that the threshold 'typicality' requirement is, like commonality, 'not high.'"  *Harrison v. Harry & David Operations, Inc.*, No.

1:18-CV-00410-CL, 2020 WL 8367533, at *7 (D. Or. Oct. 21, 2020) (quoting *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 591 (D. Or. 2013)).

Great Northern's claims are typical of the claims or defenses of the Settlement Class: Great Northern applied to the Fund, its owner did not identify as Black, claimed COVID-related losses as required by the applications, did not receive any funding, and claims the Fund's race-conscious approach was not permissible. These claims are coextensive with the absent class members, who (1) all applied to the Fund but did not identify as Black, or as a Black-owned business or Black-focused organization, (2) may or may not have demonstrated the required COVID-related losses (to be determined in the course of claims administration), and (3) did not receive a grant from the Fund.

Adequacy of Representation. Adequacy turns on two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting *Hanlon*, 150 F.3d at 1020).

Great Northern has fairly and adequately protected the interests of the Settlement Class – a fact demonstrated by counsel's vigorous prosecution of this action, including amendment of the complaint, repeated injunction practice, and the result of its settlement negotiation. Great Northern filed suit and immediately sought to enjoin the Fund's use of race-conscious criteria. After the Contingent deposited $200,000 with the Court to cover Great Northern's potential damages and the Court denied the injunction, Great Northern amended its complaint to assert class claims and renewed its motion for a temporary restraining order or preliminary injunction. In other words, Great Northern remained focused on relief for all members of the class even where its own financial interest was secured.

As a result of Great Northern's litigation efforts on behalf of the Class, The Contingent deposited $9 million with the Court and halted the Fund's operations. Ultimately, the State Defendants agreed to settle on terms that allowed all Fund applicants who did not identify as

Black to have their applications considered and, if eligible, paid; the settlement further allows all Black-identifying applicants (who submitted applications before the Fund closed) to be paid by ultimately providing for the release of the remaining funds held on deposit with the Court. Based on these application demands, the State anticipates eligible Class members will receive up to $3.5 million in grants – a result made possible through Great Northern's persistence in this litigation.

The commonality between Great Northern and the Class Members furthers this conclusion: Great Northern's interests are reasonably, if not entirely, coextensive with those of the Settlement Class: it cannot be said that counsel failed one over the other. *See Moore v. PetSmart, Inc.*, 728 F. App'x 671, 674 (9th Cir. 2018) ("when class members essentially seek the same thing from the defendant and differ only with respect to the amount or value of their claims, absent vast differences or some other evidence of unfairness, there is no fundamental conflict sufficient to defeat adequacy."); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (finding class counsel met their burden of "adequacy" with evidence of coextensive interests between named plaintiffs and class). And because State Defendants have agreed to fund the Settlement Class Fund in its entirety, neither Great Northern nor its counsel present any conflicts of interest between themselves and other Class Members. *Id.* at 958 (analyzing Rule 23(a)(4)'s adequacy requirement based on the representative's vigorous prosecution and absence of conflicts of interest); *cf. In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018) (noting possibility for conflicts where class members have competing economic interests in limited settlement funds).

Finally, "[a]dequacy of representation also depends on the qualifications of counsel." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018). As demonstrated below and in the Motion for Approval of Attorney's Fees (and the Joint Declaration of Class Counsel), Class Counsel are qualified and experienced constitutional litigators who vigorously prosecuted this action, and they will continue to vigorously represent the interests of the Class throughout administration of the settlement. Joint Decl., ¶¶ 19–25; Davidson Decl., ¶ 6.

The Settlement Class meets all the requirements of Rule 23(a).

**2.      The Settlement Class Meets the Requirements of Rule 23(b)(3).**

Under Rule 23(b)(3), the Court may certify a class when it finds that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

While the "predominance" inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Hanlon*, 150 F.3d at 1026, the "superiority" inquiry ensures a class action is the most efficient and effective means of resolution and considers whether individual recovery "would be dwarfed by the cost of litigating on an individual basis." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The Settlement Class meets both conditions.

<u>Predominance</u>. "The Rule 23(b)(3) predominance inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). This inquiry "focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication'; if so, 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556, 557 (9th Cir. 2019) (quoting *Hanlon*, 150 F.3d at 1022).

"A district court's assessment of predominance 'begins, of course, with the elements of the underlying cause of action,'" and "[t]he focus of the inquiry accordingly varies depending on the nature of the underlying claims." *Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020) (citation omitted). And "[t]he predominance requirement is 'readily met' where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *Hyundai*, 926 F.3d at 559).

Questions of law or fact, common to the Settlement Class, dominate any question affecting individual Class Members. The Settlement Class is discrete, consisting only of those individuals, businesses, and nonprofits that applied to the Fund before 11:59:59 p.m. on December 8, 2020, whose applications do not indicate that the applicant identifies as Black, or is a Black-owned business or Black-focused organization. The resulting class is cohesive: every Class Member applied to the Fund before its closure, does not (at least as self-reported) satisfy the Fund's race-conscious criteria, and seeks the same remedy (the processing of their applications using race-neutral criteria). In other words, the issues posed by the Settlement Class are the same for every member: Whether the Fund's use of race-based criteria violated the Equal Protection Clause and federal anti-discrimination statutes. Where, as here, common questions present a "significant aspect of the case," "clear justification" exists for handling the dispute on a representative rather than on an individual basis. *Hanlon*, 150 F.3d at 1026.

Superiority. "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin*, 617 F.3d at 1175 (quoting 7AA Charles Alan Wright et al., Federal Practice and Procedure § 1779 (3d ed. 2005)). This inquiry asks whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). And "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175 (citations omitted). Accordingly, this Court has recognized that class treatment is superior where "[c]lass members would have 'less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery' should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015) (quoting *Hanlon*, 150 F.3d at 1023).

In light of the predominance of those issues shared by the Proposed Settlement Class, representative adjudication is a superior option here. Individual Class Members likely hold little interest in prosecuting separate actions, particularly considering that Class Members applying as

natural persons are eligible for relatively small awards ($1,000 or $3,000), and the cost of litigation alone would dwarf any individual recovery (including the maximum business award of $200,000). Principles of judicial economy support the superiority of a class action as the Proposed Settlement would eliminate many potential individual suits, preserve the Court's time and resources, and economically resolve approximately 1,155 claims. Because no other avenue exists for such a fair and effective adjudication, the Settlement Class satisfies the "superiority" test, and class certification is proper under Rule 23(b). *See Wolin*, 617 F.3d at 1176 (holding that "although alternative means of recovery are available, *e.g.*, small claims court" "class-wide adjudication 'of common issues will reduce litigation costs and promote greater efficiency'"); *Magallon*, 311 F.R.D. at 641 (finding that class treatment was superior because "most class members would likely forego pursuing claims, since their individual damages are relatively small and litigating in federal court or elsewhere is costly"). A class action is the superior vehicle for members of the Settlement Class.

**B.       The Court Should Reaffirm Appointment of Class Counsel.**

Federal Rule of Civil Procedure 23(c)(1)(B) states that "[a]n order certifying a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) requires the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

In its Preliminary Approval Order, the Court provisionally appointed Murphy & Buchal LLP, Benbrook Law Group, PC, and Mitchell Law PLLC as Class Counsel. Counsel are qualified and experienced constitutional litigators with substantial experience handling class actions and constitutional litigation. Class counsel Jonathan F. Mitchell, for example, has litigated over 20 lawsuits brought to recover agency fees and compulsory union dues on behalf of public employees in the wake of *Janus v. Am. Fed'n of State, Cty., and Mun. Emps., Council*

*31*, 138 S. Ct. 2448 (2018).  And class co-counsel Bradley Benbrook, is serving as co-counsel with him in several of those lawsuits.  Joint Counsel Decl., ¶¶ 21, 24.

Mr. Mitchell is also litigating four class-action lawsuits on behalf of property owners in Texas who are seeking to recover property taxes that were unlawfully collected by their school districts. Those cases are: *Anderson v. Kilgore Independent School District*, No. 2016-1850-CCL2 (Gregg County); *Martin v. White Deer Independent School District*, No. 11807 (Carson County); *Cuellar v. Dumas Independent School District*, No. 17-57 (Moore County); and *Quring v. Mount Pleasant Independent School District*, No. 41318 (Titus County). Each of these cases remains pending in state court. Finally, Mr. Mitchell has been certified as class counsel in several Rule 23(b)(2) lawsuits, including *DeOtte v. Azar*, 332 F.R.D. 188 (N.D. Tex. 2019), and *Vita Nuova v. Azar*, 2020 WL 8271942 (N.D. Tex. Dec. 2, 2020).  Joint Counsel Decl., ¶ 22.

Mr. Benbrook and Mr. Duvernay have substantial expertise in constitutional and public-interest litigation. Benbrook Law Group has litigated several First Amendment and Equal Protection cases in state and federal court, and it has filed approximately twenty amicus briefs in the Supreme Court of the United States in a variety of constitutional cases.  In addition, Mr. Benbrook has handled multiple consumer and securities class actions as defense counsel.  Joint Counsel Decl., ¶ 23–25.

Mr. Buchal has substantial experience in complex civil, regulatory, and constitutional litigation in state and federal court.  In addition to litigating numerous matters in this district, Mr. Buchal has represented clients in cases before the Ninth Circuit and in the Supreme Courts of Oregon, Washington, and California.  *See, e.g.*, *Bohmker v. Oregon*, 903 F.3d 1029 (9th Cir. 2018); *E. Oregon Mining Ass'n v. Dep't of Env't Quality*, 365 Or. 313 (2019); *Nearman v. Rosenblum*, 358 Or. 818 (2016); *Washington Off Highway Vehicle All. v. State*, 290 P.3d 954, 955 (Wash. 2012); *Cent. Coast Forest Assn. v. Fish & Game Comm'n*, 389 P.3d 840 (Cal. 2017); *People v. Rinehart*, 377 P.3d 818 (Cal. 2016).  Joint Counsel Decl., ¶ 26.

As set out in further detail in the Motion for Approval of Attorney's Fees and the accompanying Joint Declaration of Class Counsel, Class Counsel performed extensive work

identifying and investigating the claims in this action, vigorously litigated the complex legal issues before the Court, and extensively negotiated a complicated settlement that will provide significant monetary relief to members of the Settlement Class. Joint Decl., ¶¶ 2–19. Class Counsel devoted the appropriate amount of resources to litigate this relatively brief but intense case.

## C.     This Settlement Satisfies the Criteria for Final Approval.

Under Federal Rule of Civil Procedure 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is "fair, reasonable, and adequate." Courts reviewing class action settlements must "ensure[ ] that unnamed class members are protected 'from unjust or unfair settlements affecting their rights,'" while also accounting for "the 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Hyundai*, 926 F.3d at 556, 568 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), and *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). And "[a]lthough Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citation omitted).

To that end, district courts consider several factors when evaluating the fairness of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.

Recent amendments to Rule 23 direct the Court to consider a similar list of factors, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Advisory Committee's explain that these enumerated factors do not "displace" the *Hanlon* factors, "but rather [serve] to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes to 2018 Amendments, Fed. R. Civ. P. 23(e)(2). The proposed settlement is fair, reasonable, and adequate under Rule 23(e)'s factors.

### 1. The Class Representatives and Class Counsel Have Vigorously Represented the Class.

The court must first consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "This analysis is 'redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively.'" *Hudson v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 Newberg on Class Actions § 13:48 (5th ed.)). As discussed above, Great Northern and its counsel have vigorously prosecuted this suit and have adequately represented the proposed class. Great Northern's interests are aligned with other class members' because they have suffered the same injury from the same wrongful conduct. Class Counsel's prosecution of this case has demonstrated that they are qualified, experienced, and able to represent the class' best interests. Accordingly, the adequacy factor under Rule 23(e)(2)(A) is met for the same reasons that the proposed class satisfies Rule 23(a)(4).

### 2. Class Counsel Negotiated the Settlement at Arms' Length.

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). This can be "described as [a] 'procedural' concern[ ], looking to the conduct of the litigation and of the negotiations leading up

to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. To that end, "[c]ourts within the Ninth Circuit 'put a good deal of stock in the product of an arms-length [sic], non-collusive, negotiated resolution.'" *Azar v. Blount Int'l, Inc.*, No. 3:16-CV-0483-SI, 2019 WL 7372658, at *2 (D. Or. Dec. 31, 2019) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

The declarations of counsel demonstrate that the settlement was negotiated at arms' length. (Davidson Decl., ¶ 5; Joint Decl., ¶¶ 15–16.) Counsel for both sides are qualified and competent litigators, individuals well-positioned to evaluate the strengths and weaknesses of continued litigation against the reasonableness of the Settlement. Great Northern's counsel has handled multiple class actions involving civil rights issues, as well as other complex mass or multi-party actions throughout the United States in both federal and state courts—all factors weighing in favor of preliminary approval of the Settlement. And while the parties did not engage in discovery, this case primarily involved issues of law and the parties engaged in serial motion practice to address the complex constitutional issues at play.

Judge Mosman's oversight and assistance in the settlement process also weighs in favor of finding an absence of collusion. The Advisory Committee Notes state that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." *See also In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (recognizing that settling with the assistance of neutral mediators is a "factor weighing in favor of a finding of non-collusiveness"); *G.F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("'[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'").

Furthermore, the settlement withstands scrutiny under the "warning signs" of collusion that the Ninth Circuit looks for when evaluating a pre-certification settlement. *Bluetooth*, 654 F.3d at 947. Those signs include: (1) "when class counsel receives a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing' arrangement

providing for the payment of attorneys' fees separate and apart from class funds without objection"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (citations omitted).

First, Class Counsel will not receive a disproportionate share of settlement: they are seeking a fee award of less than $200,000 – approximately 5% of all funds anticipated to be paid to Class Members through the settlement. Class counsel are receiving no more than a lodestar recovery, even though they could plausibly have demanded far more to account for the risk they undertook, and even though they secured a class recovery far greater than the typical class action in which plaintiff attorneys walk away with millions in fees.

Second, while the State Defendants have agreed to pay fees separate from class funds and not to object to a fee request up to $185,945, that agreement does not evidence collusion given the size of the fee request and the overall structure of the settlement, which will provide full payment to each Class Member. Courts routinely approve class settlements that include clear-sailing provisions where the class receives adequate relief and there is no evidence of collusion. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, No. 15-CV-02632-JST, 2017 WL 3670711, at *5 (N.D. Cal. Aug. 25, 2017) (approving settlement despite clear-sailing provision because "[t]he amount of fees is reasonable in view of the size and complexity of the action, and does not appear to have diminished, or encouraged Plaintiffs' counsel to reduce, what is a substantial settlement for the class"); *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725-JSC, 2020 WL 1531331, at *13 (N.D. Cal. Mar. 31, 2020) (approving settlement with clear-sailing provision because the settlement "adequately satisfie[d] the class members' claims," there was no evidence of collusion, and the settlement negotiations were overseen by a mediator).

Finally, the presence of a revision clause does not render the Settlement unfair because it provides for the processing of every Class Member's application. Thus, the return of any amount of the Settlement Class Fund denotes the satisfaction of the class claims. While unconventional, this class-friendly term does not suggest self-interest or collusion.

The settlement was the product of arm's length process and is not the product of collusion.

**3.    The Relief Provided by the Settlement Represents a Strong Recovery, Taking into Account the Costs, Risks, and Delay of Trial and Appeal.**

The third factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." 2018 Advisory Committee Notes.

**a.    The Proposed Settlement Outweighs the Costs, Risks, and Delay of Trial and Appeal.**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citations omitted). This case is no exception. Continued litigation of this action would be lengthy, complex, costly, and protracted. For one, the parties have not yet engaged in fact discovery, which would involve extensive written discovery, document productions, several depositions, followed by class certification briefing (a process likely involving expert disclosures and depositions), before finally submitting briefs in support of summary judgment. Lacking resolution, the parties would eventually proceed to trial, which may result in an appeal. All of these matters would require significant time and expense and offer no guarantee of success.

Furthermore, <u>all</u> Class Members will be paid <u>in the full amount</u> that their applications support. Full payment of Class Members' applications – a rare result in class actions – weighs strongly in favor of the proposed settlement. That result may even be more favorable than the likely result if this action does not settle. The parties dispute what remedies would be available

were Plaintiffs to prevail. But assuming for the sake of argument that the Court were to order as a remedy the race-neutral processing of applications submitted prior to the Fund's closing, that could result in fewer applicants receiving payment than through the proposed settlement. But the settlement provides all Class Members with "certain and prompt relief," a "significant benefit that [they] would not receive if the case proceeded." *Bell v. Consumer Cellular, Inc.*, No. 3:15-CV-941-SI, 2017 WL 2672073, at *5 (D. Or. June 21, 2017) (quoting *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013)).

The Proposed Settlement's substantial and immediate benefits far outweigh the potential costs, risks, and delay of trial and appeal.

### b. The Proposed Method of Distributing Relief to the Class is Highly Effective.

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.* "The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Moreno v. Beacon Roofing Supply, Inc.*, No. 19cv185 (LL), 2020 WL 1139672, at *9 (S.D. Cal. July 13, 2020) (quoting Rubenstein, 4 Newberg on Class Actions § 13.53 (5th ed.)).

Here, the claim process provides Class Members a clear, efficient route to obtain relief because it does not require Class Members to submit a claim for relief, since in essence Class Members have already submitted their claims by applying to the Fund. Instead, the Administrator will process each Class Member's application as previously submitted to The Contingent. (Proposed Settlement ¶¶ 51(a), 52.) *See, e.g., Moreno*, 22020 WL 1139672, at *9

(finding the distribution method "straightforward" and "not burdensome" in part because it did not require class members to submit claims).

In addition, the Proposed Settlement Class is opt-out, versus opt-in, placing less burden on Class Members to qualify for relief. (*See* Proposed Settlement ¶ 14.) And because the Administrator will process the applications (rather than an interested party), the proposed method of processing the applications is not only fair, but neutral.

### c. The Proposed Award of Attorney's Fees Is Fair.

Third, the Court Considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Class Counsel are submitting a motion for attorney's fees to be heard at the final approval hearing. Here, we simply note that the Defendants agreed to a fee award of $135,945 for work through February 14, and would not oppose an additional fee award of up to $50,000 for work implementing the settlement thereafter. The proposed award sought in the motion for approval of attorney's fees ($178,452.20 through the day before this filing) represents roughly 5% of the anticipated benefit being conferred on the Settlement Class. For good reason, all parties agree that the attorney's fee component of this settlement is "modest." (ECF. No. 85 at 16).

### 4. The Proposed Settlement Treats Class Members Equitably.

The Court must also determine whether the proposed settlement "class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Committee Notes.

In determining the equitable nature of a settlement, courts often consider "whether the settlement unreasonably gives preferential treatment to the class representatives or other class members." *Loomis v. Slendertone Distribution, Inc.*, No. 19-CV-854-MMA (KSC), 2021 WL 873340, at *8 (S.D. Cal. Mar. 9, 2021) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). The Proposed Settlement treats all Class Members fairly and

equitably: <u>Each</u> Class Member will have its application independently reviewed and will be paid <u>in the full amount</u> that their applications support.

In addition, the Proposed Settlement provides Great Northern a payment of $25,000, which represents the pandemic-related expenses it claimed in its Fund application, and up to an additional $20,000 as a service award if approved by the Court. (ECF No. 93-2, Proposed Settlement, ¶¶ 45 & 87). This amount is proportional to Great Northern's efforts in this case, as it initiated this action and litigated two injunctions, and it is justified by the result of the settlement. (*See, e.g.*, ECF Nos. 12, 32, and 39). Moreover, Great Northern, through its efforts, faced substantial risk of harassment and potential retribution based on the nature of its claims. *See* Houpt Decl., ¶¶6-9.

Accordingly, this last and final factor also weighs in favor of approval of the Proposed Settlement.

## D.     Plaintiffs Have Provided Adequate Notice.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), and upon settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests an exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).

Notice may be by "United States mail, electronic means, or other appropriate means." *Id.* "To satisfy Rule 23(e)(1), settlement notices must 'present information about a proposed settlement neutrally, simply, and understandably.'" *Hyundai*, 926 F.3d at 567 (quoting

Rodriguez, 563 F.3d at 962). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Id.* (citation omitted).

The notice satisfied the requirements of Rule 23(c)(2)(B). It defined the class and described the claims and defenses in plain language. The notice advised potential class members of their right to individual counsel, their right to seek exclusion from the proposed class, the appropriate means for seeking exclusion, and the binding effect of proposed settlement, if approved. *See* Joint Decl., Exhibit 5. The Notice also provided a link to a website that provides the same information, as well as links to the Settlement Agreement, Court's Preliminary Approval Order, and an ACH payment request form for payment of claims. See https://www.oregoncaresfundsettlement.com.

The notice program administered by SSI has been effective. *See* Section III *supra*. As we have explained, the notice was based on records provided by defense counsel, which ensured that every class member (or as many as possible) received actual notice by either e-mail or first-class mail. As contemplated by the Settlement Agreement, SSI also established and maintains the settlement website. This more than satisfies the requirements of Rule 23 and the Due Process Clause.

Finally, the Defendants provided the notice to appropriate Federal and State officials pursuant to 28 U.S.C. § 1715. (*See* ECF No. 95).

## V.  CONCLUSION

For the reasons stated above and in the supporting materials filed herewith, the Court should:  (1) certify the settlement class as proposed under Rule 23(a) and (b)(3); (2) confirm Great Northern's appointment as the representative of the settlement class; (3) confirm the appointment of the following attorneys as class counsel: Jonathan Mitchell of Mitchell Law PLLC; Bradley Benbrook and Stephen Duvernay of Benbrook Law Group, PC; and James Buchal of Murphy & Buchal LLP; and (4) grant final approval to the proposed settlement as "fair, reasonable, and adequate" under Rule 23(e).

Respectfully submitted,

/s/ Bradley Benbrook
Bradley Benbrook*
California Bar No. 177786
Stephen M. Duvernay*
California Bar No. 250957
Benbrook Law Group, PC
400 Capitol Mall, Suite 2530
Sacramento, California 95814
(916) 447-4900 (phone)
(916) 447-4904 (fax)
brad@benbrooklawgroup.com

Jonathan F. Mitchell*
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

James L. Buchal
Oregon Bar No. 921618
Murphy & Buchal LLP
3425 SE Yamhill Street, Suite 100
Portland, Oregon 97214
(503) 227-1011 (phone)
(503) 573-1939 (fax)
jbuchal@mbllp.com

Dated: May 12, 2021

* admitted pro hac vice

Counsel for Plaintiffs
and the Proposed Class